557 So.2d 1147 (1990)
Charles E. BURFORD, Jr., Plaintiff-Appellee,
v.
FIRST NATIONAL BANK IN MANSFIELD and Sharon Porter Burford, Defendants-Appellants.
No. 21190-CA.
Court of Appeal of Louisiana, Second Circuit.
February 28, 1990.
*1148 Plummer, Means & Burgess by Robert E. Plummer, Jack R. Gamble, Jr., Mansfield, for defendants-appellants.
Keene, Auer & Antee by Kenneth R. Antee, Jr., Shreveport, for plaintiff-appellee.
Before MARVIN, SEXTON and LINDSAY, JJ.
SEXTON, Judge.
The defendants appeal a $10,000 judgment in favor of the plaintiff for invasion of privacy based on an unauthorized disclosure of a financial statement the plaintiff furnished the defendant First National Bank in Mansfield. For the reasons which will be considered more fully below, we reverse in part, amend in part, and affirm as amended.

FACTS
Plaintiff Charles E. Burford, Jr. and defendant Sharon Porter Burford were legally separated on January 19, 1984. Although separated in law and in fact, they continued to pursue mutual business interests together pending a division of their community property. Additionally, Mrs. Burford continued to have access to the couple's community home.
At issue is an October 22, 1985, financial statement which the plaintiff provided the defendant First National Bank in Mansfield in order to update his file with the bank. A bank officer testified that it was standard procedure to have a loan customer update his file once per year. As an assistance to such customers, the bank frequently provided a copy of the previous year's statement to the customer in order to ease the preparation of each updated version. Mr. Burford denied ever having received a copy of the 1985 statement; however, the bank's branch manager specifically recalled having personally retrieved Mr. Burford's credit file and providing such a copy to him.
In December 1987 during previous litigation to divide the couple's community property, Mrs. Burford introduced a copy of Mr. Burford's 1985 financial statement into evidence. When questioned by Mr. Burford's attorney, Mrs. Burford testified that she had requested a copy of the statement from and was given one by First National Bank in Mansfield, though she could not recall specifically who had given it to her.
Mr. Burford filed suit against both the bank and his ex-wife alleging that the bank had provided his ex-wife with a copy of the financial statement without following statutorily prescribed procedures and that she had thereafter introduced it into evidence in open court, all of which combined to invade his privacy.
The district court ruled in favor of the plaintiff holding defendants solidarily liable for $10,000 in damages. Both defendants have appealed.

DUTY OF CONFIDENTIALITY
Plaintiff based his cause of action upon the defendant bank's furnishing a copy of his financial statement to his ex-wife and upon her making that statement public when she introduced it into evidence in community property litigation. Because plaintiff's allegations raise different questions of legal duty allegedly owed by the defendants, we will consider those questions separately.
A. Bank's Duty
Although he only argues his case under one statute, plaintiff's factual allegations *1149 against the bank actually implicate two separate statutes, LSA-R.S. 6:333 and 9:3571. Those statutes provide, in their entirety, as follows:
6:333. Subpoena of records; reimbursement for records produced
A. A bank shall disclose financial records of its customers pursuant to a lawful subpoena, summons, or court order served upon one of the registered agents for service of process of the bank only if the bank is furnished by the person requesting the subpoena, summons, or court order with an affidavit that such subpoena, summons, or court order has also been served upon the customer whose records are sought at least ten days prior to the date on which the records are to be disclosed. No bank, director, officer, employee, or agent thereof, shall be held civilly or criminally liable for disclosure of financial records of such a customer pursuant to a subpoena, summons, or court order which on its face appears to have been issued upon lawful authority and is accompanied by such an affidavit.
B. (1) Nothing in this Section shall be construed to apply to general credit information relating to promptness of payments, limits of credit, or general information normally furnished to a credit reporting agency or among financial institutions for use in establishing an individual's credit rating or to any other business entity who has a legitimate business need for it.
(2) Nothing in this Section shall be interpreted or construed to apply to any authorization or approval of a specific extension of credit directly or indirectly by a credit card company or a business offering credit or the exchange of information between business organizations solely as to transactions or experiences between the consumer and such business organizations.
C. Prior to making disclosure, the bank shall be reimbursed by the requesting person for the reasonable costs incurred or to be incurred by it in the course of compliance, including but not limited to document reproduction costs, personnel costs, and travel expenses.
9:3571. Dissemination of specific credit information; requirements; penalties
A. No bank, savings and loan association, or company issuing credit cards, or business offering credit shall disseminate specific information to any person relating to dates, amounts, numbers, places, or any other record of information concerning receipts, expenditures or other financial or credit transactions except under the following circumstances:
(1) If a subpoena duces tecum or other valid and enforceable order, is issued by a federal agency, a congressional committee, the legislature of this state, or a federal or state court; and to the extent allowed by the return date of such subpoena or other order.
(2) Upon receipt of certification in writing from the person or entity serving the subpoena or order that it has given notice by registered mail to the person whose records are the object of the subpoena or order; and
(3) The individual fails to take appropriate legal action to restrain the release of such information within fifteen days after the notice provided for in Paragraph (2) of this Subsection.
B. Failure of an individual to comply with the provisions of this Section shall constitute a waiver of his rights against the institution complying with the subpoena duces tecum.
C. Nothing in this Section shall be construed to apply to general credit information relating to promptness of payments, limits of credit, or general information normally furnished to a credit reporting agency or among financial institutions for use in establishing an individual's credit rating, or to any other business entity who has a legitimate business need for it.
D. Nothing in this Section shall be construed to apply to any authorization or approval of a specific extension of credit directly or indirectly by a credit *1150 card company or a business offering credit.
E. This Section shall not apply to any request by a law enforcement agency for information sought in connection with an investigation of any alleged crime other than an investigation into a crime which constitutes a violation of federal, state or municipal tax law.
F. Nothing in this Section shall be interpreted or construed to apply to the exchange of information between business organizations solely as to transactions or experiences between the consumer and such business organizations.
Each of these statutes prohibits the dissemination of a banking customer's[1] personal banking records or credit information except pursuant to a valid order issued by an appropriate governmental agency and after notice has been given to the consumer. Each of the statutes additionally contains exceptions to the general prohibition against disclosure.
Plaintiff argues that a cause of action arises when an individual's financial records are disclosed by a bank or financial institution in a manner inconsistent with the above procedures. The defendant bank offers no specific argument regarding its duty relative to maintaining a customer's records, but focuses instead on whether plaintiff met his burden of proving that Mrs. Burford acquired a copy of the financial statement from the bank, rather than from some other source.
Our research of both statutes has failed to yield any jurisprudence or scholarly commentary which directly addresses the issue presented here. Notwithstanding, we will attempt to do so in light of prevailing legal principles regarding the violation of statutory prohibitions.
In Dixie Drive It Yourself System New Orleans Co. v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962), the court held that the violation of a safety statute constitutes negligence per se and that such negligence was actionable if it was the cause of harm to the plaintiff. Although Dixie arose in the context of the violation of a statute concerned with automotive safety, we believe the legal principles espoused regarding statutory negligence, or negligence per se, may be applied as well to the instant situation.
LSA-R.S. 6:333 provides that a bank shall disclose financial records of its customers pursuant to a lawful subpoena, summons or court order only if the bank is furnished an affidavit by the person requesting the records that notice has also been served upon the customer whose records are sought at least ten days prior to the date on which the records are to be disclosed. No bank shall be held civilly liable for disclosure of financial records pursuant to such an order which on its face appears to have been issued upon lawful authority and is accompanied by such an affidavit. LSA-R.S. 9:3571 provides that no bank shall disseminate specific information to any person relating to any record of information or other financial or credit transactions, except pursuant to a valid and enforceable order, upon receipt of certification in writing that the person has been notified by registered mail, and the person fails to take appropriate legal action to restrain the release of the information sought within fifteen days.
Both of these statutes prohibit a bank from disclosing information or records from a customer's file except pursuant to an order issued by certain listed governmental bodies and only after notice to the customer. LSA-R.S. 6:333 protects the bank and its personnel from liability when the statutory safeguards are followed, implicitly withdrawing such protection when the prescribed procedures are not followed. Although LSA-R.S. 9:3571 makes no mention of liability or penalties for non-compliance, the preamble of Act No. 252 of 1976, by which the statute was enacted, expressly notes that the act has, as one of its purposes, "to provide civil penalties for violations." Further, the statute is entitled "Dissemination of specific credit information; *1151 requirements; penalties." [emphasis ours]
Thus, although neither statute specifically contains any language which expressly creates a cause of action in favor of an individual whose records were wrongfully disclosed, we find that these statutes create a duty of confidentiality on the part of financial institutions in favor of their customers. Therefore, the breach of that duty which creates harm is actionable. Accordingly, we conclude that First National Bank in Mansfield had a duty to maintain the confidentiality of and not to disclose plaintiff's bank records, including the financial statement at issue.
B. Mrs. Burford's Duty
The second aspect of this issue involves whether plaintiff's allegations call into question any duty owed to him by his ex-wife. In his petition, plaintiff alleged that his ex-wife filed the financial statement in evidence in open court in a lawsuit between the two regarding the division of their community property. She filed exceptions of no cause and no right of action which the district court ultimately denied.
The only thing which Mrs. Burford is alleged to have done is to place a copy of the financial statement into evidence in a proceeding in which she and her ex-husband were litigating the division of their community property. The statement, which contained valuations of numerous items of community property, was relevant to the litigation and could have been procured by Mrs. Burford through any one of several means of discovery. What she is alleged to have done is something which she was entitled to do.
Mrs. Burford breached no duty to her ex-husband by procuring a copy of the financial statement or by introducing it into evidence. She had a right to obtain it under the instant circumstances and to introduce it into evidence. Therefore, whatever embarrassment or anguish Mr. Burford may have experienced as the result of the filing of that statement into evidence was not the result of the breach of any duty owed to him by Mrs. Burford. Accordingly, the decision of the district court denying Mrs. Burford's exception of no cause of action is reversed, and that exception is hereby sustained rejecting the demands of Charles E. Burford, Jr. against Sharon Porter Burford.

BURDEN OF PROOF
The appellant bank argues that plaintiff failed to prove that one of the its personnel provided Mrs. Burford with a copy of the financial statement. Specifically, the bank argues that the transcript from the Burford's community property litigation, which was offered into evidence to impeach Mrs. Burford's apparent inability to remember where she procured the copy of the financial statement, should not have been considered as substantive evidence on that factual issue. Mr. Burford does not address this specific legal issue but merely argues that the district court's factual conclusions are entitled to great weight.
At the trial below, the following dialogue transpired between Mrs. Burford and plaintiff's attorney regarding her source for the document:
Q Where did you receive this document that you presented into evidence?
A I do not remember.
Q You do not remember?
A I do not remember.

* * * * * *
Q I believe the question was did you know where that document came from before it was put in evidence?
A No.
Q Isn't it true that in the testimony you gave in that trial that you stated that this document came from First National Bank?
A No, I did not.
Q You never made that statement?
A I did not say it came from First National Bank.

* * * * * *
Q Do you remember him asking you the statement where did you obtain this financial statement?
A Yes, I do.

*1152 Q What was your answer at that time?
A I said I could have gotten it anywhere, I could have walked into First National Bank and asked for it because it was our property; I did not say I did.

* * * * * *
Q But you are contending that's not what you said at that hearing or at that trial?
A I could have, yes, is what I am contending.
Q So isn't it true that your answer to that question was, to the question, "And where did you obtain this financial statement", "First National Bank"?
A I said I could have obtained it from there.

* * * * * *
Q Isn't it true that your Mother works at First National Bank?
A Yes, she does.
Q And isn't it true that she worked there at the time of this trial?
A Yes, she did.
Q Isn't it true that you possibly could have received that from your Mother?
A No, I could not have.
Q Isn't it true that you may have received it from another employee of First National Bank?
A I do not remember.
Q Do you state here today that there was no way you could have received that from an employee of First National Bank?
A I said I do not remember where I got the statement.
Q Are you stating here today that you cannot postively [sic] rule out that you may have gotten this statement from an employee of First National Bank?
A I cannot rule it out.

* * * * * *
Q Did you get this document that you entered into evidence on December 14, 1987, out of that home?
A I do not remember, I did get some things.

* * * * * *
Q But you don't remember going in specifically to get financial statements, do you?
A I remember going in specifically to get some information at various and several times, yes, but I do not remember where I got the financial statement.
Q But you do remember testifying that you got it from First National Bank when questioned, don't you?
A I did not, I said I could have.

* * * * * *
Q So it is your testimony here today that you do not know where you received the financial statement that was put into evidence?
A I do not know.
The portion of the previous trial's transcript introduced into evidence at the trial below contains the following pertinent colloquy between Mrs. Burford and Mr. Burford's previous attorney:
Q And where did you obtain this financial statement?
A First National Bank.
Q How did you get it from First National Bank?

* * * * * *
A Alright, at the time I was still Mrs. Charles E. Burford, Jr., I still had all rights and accesses tomy name was on every account, I could have written checks on any dairy, trucking, or personal account; all our business was one and the same.

* * * * * *
Q I am asking you how did you get a financial statement dated in August of '85?
A I asked for a financial statement.
Q From whom, who gave it to you?
A First National Bank.
Q Who at the First National Bank?
A I don't remember.

* * * * * * *1153 Q Well, who in that bank did give it to you?
A I don't remember.

* * * * * *
Q That is your sworn testimony, you don't know who gave it to you?
A I do not know.
The bank is correct that the transcript of the prior inconsistent statement may not be considered for its substantive value but may only be used to impeach the testimony of Mrs. Burford.[2]
However, Mrs. Burford did testify in the instant trial that she could not rule out having obtained the financial statement from the bank. Further, the trial court, considering the result it reached, must have implicitly resolved all credibility determinations in favor of Mr. Burford against Mrs. Burford and the bank. It is apparent that the trial court considered Mrs. Burford's instant testimony impeached and placed little weight on the bank's negative evidence that its investigation could not reveal any employee who would come forward and admit to providing Mrs. Burford with a copy of the statement. Further, the trial court obviously credited Mr. Burford's testimony that the bank had the only copy of the financial statement and that he was never in receipt of a copy thereof from the bank.
Thus, the bank was in possession of the document, and Mr. Burford did not have a copy. Mrs. Burford could not rule out that she had gotten the document from the bank. Interestingly, Mrs. Burford's mother worked at the bank during the time period in question. These circumstances support the district court's finding that, more probably than not, Mrs. Burford acquired the financial statement from one of the bank's personnel. On this record, we cannot say that the district court was clearly wrong in this factual conclusion.

DAMAGES
Finally, appellants argue that the damages awarded to Mr. Burford are excessive. (We need not consider the bank's further argument that it should not be liable in solido with Mrs. Burford for these damages because we have concluded that Mrs. Burford is not liable under the instant circumstances.)
Mr. Burford counters that general damages are, by their very nature, insusceptible of precise calculation and that the amount awarded by the district court is supported by the evidence. In so arguing, Mr. Burford points to several particulars of damage which he asserts are supported by the record. These can be summarized as (a) annoyance and embarrassment which he experienced upon discovering that his ex-wife had obtained a copy of his financial statement without notice to him, and (b) damages which resulted from his ex-wife having a copy of the financial statement for use in litigation against him and certain effects which flowed from making that statement public by introducing it in evidence in the community property litigation. He does not assert, nor do we glean from the record, that the statement was published in any fashion other than being introduced into the record in the previous lawsuit.
Mr. Burford expressly acknowledged that he was not harmed by the figures or embarrassed by the net worth reflected in the statement. He could not name any creditor who had denied him credit since the disclosure and introduction into evidence of the statement, and his personal finances had already been thoroughly reviewed in the course of yet another litigation with Mrs. Burford concerning child *1154 support. We must agree with the bank that the damages awarded were excessive. As we have previously noted, the financial statement was discoverable by Mrs. Burford from the bank in the community property litigation. It was further relevant and admissible in that litigation.
Therefore, the only real damage is any slight consternation Mr. Burford may have experienced upon learning that his wife already had a copy of his financial statement which was obtained from his financial institution without notice to him. Under these circumstances, we conclude that $500 is the highest reasonable award which we could affirm. Reck v. Stevens, 373 So.2d 498 (La.1979); Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).

CONCLUSION
The district court judgment in favor of plaintiff is hereby amended to read that:
IT IS ORDERED, ADJUDGED, AND DECREED that there be judgment herein in favor of the plaintiff, CHARLES ELMER BURFORD, JR., and against the defendant, FIRST NATIONAL BANK IN MANSFIELD, in the full sum of FIVE HUNDRED DOLLARS ($500), together with legal interest from judicial demand until paid, and all costs of these proceedings.
The judgment against SHARON PORTER BURFORD is reversed, and the exception of no cause of action of SHARON PORTER BURFORD against the demands of CHARLES ELMER BURFORD, JR. is hereby sustained.
All costs of this appeal are assessed against the defendant, FIRST NATIONAL BANK IN MANSFIELD.
REVERSED IN PART, EXCEPTION SUSTAINED, AMENDED IN PART, AND AFFIRMED AS AMENDED IN PART.
NOTES
[1] LSA-R.S. 6:333 protects a bank's "customers," while LSA-R.S. 9:3571 applies to "consumers." In the context of the instant factual scenario, any distinction is of no moment.
[2] The prior inconsistent statement is of no value as to the claim against Mrs. Burford as we have held that Mr. Burford has no cause of action against her. As to the bank, the statement is clearly hearsay as it is not within the definition of nonhearsay statements. LSA-C.E. Arts. 801 C and D. Also, it is not admissible as a declaration against interest as she, the declarant, was available. LSA-C.E. Art. 804 B. (Further, it is less than clear that when Mrs. Burford made the statement in the previous case she was aware that the statement was against a pecuniary or proprietary interest.) Thus, the sole value of the inconsistent statement is as to the plaintiff's claim against the bank as impeachment of Mrs. Burford's instant statement that she did not know where she got the financial statement. LSA-C.E. Art. 607 D(1).