641 So.2d 999 (1994)
Cynthia Langley BRISCOE, Plaintiff-Appellant
v.
Stuart Allen BRISCOE, III, Defendant-Appellee.
No. 25955-CA.
Court of Appeal of Louisiana, Second Circuit.
August 17, 1994.
*1001 Love, Rigby, Dehan & McDaniel by Hani E. Dehan, Shreveport, LA, for appellant.
James L. Fortson, Shreveport, for appellee.
Before NORRIS, LINDSAY and BROWN, JJ.
*1002 NORRIS, Judge.
The plaintiff, Cynthia Briscoe, appeals an adverse trial court judgment naming her former husband domiciliary parent of their three minor children and denying her request for permanent alimony. For the following reasons, we affirm.

FACTUAL AND PROCEDURAL BACKGROUND
Stuart Briscoe and Cynthia Langley were married on December 15, 1979 and had three children, Stuart, Lauren and James, 11, 8 and 5 respectively at the time of trial. Marital problems began in 1990. According to Mr. Briscoe, his wife simply announced that she did not love him, had never loved him and wanted a divorce. According to Mrs. Briscoe, Mr. Briscoe first broached the subject stating "we should go our separate ways," but later said he was just kidding. Mr. Briscoe testified that he never wanted a divorce; he suggested marital counseling, but Mrs. Briscoe refused. She saw a therapist alone, but told her husband later that they never discussed the marriage. Although she finally relented and attended a marriage counseling session, Mr. Briscoe stated that she was very uncooperative and it proved fruitless.
The marriage continued to deteriorate. According to Mr. Briscoe, Mrs. Briscoe persistently demanded a divorce and became more hostile towards him, cursing and picking fights. Mrs. Briscoe claimed that he always initiated the namecalling and belittled her in front of friends and relatives. By 1991, Mr. Briscoe had stopped going out with his wife and her girlfriends to bars at night because it "did not fit his lifestyle," but Mrs. Briscoe continued to frequent bars, meet and dance with other men, and tell him how much she enjoyed it. In July 1991, Mrs. Briscoe told her husband she would no longer have sexual relations with him. In April 1992 Mr. Briscoe, suspecting that his wife may be having an affair, installed a wiretapping device on his home phone to record her conversations; he eventually collected about 60 tapes. Mrs. Briscoe claimed she knew that he had tapped the phone and was listening to her calls. Mr. Briscoe admitted that he also recorded some of his own face to face conversations with Mrs. Briscoe using a portable tape recorder, but explained he only taped arguments as a legitimate therapy technique to promote fair fighting.
On August 14, 1992, one day after her husband went to Florida on business, Mrs. Briscoe filed for divorce. Although she knew he was attending an annual meeting and would return August 18, she requested provisional custody and a temporary restraining order (TRO) alleging that they had physically separated on August 13, 1992. She further stated in a sworn affidavit that since then, the children had been in her custody, and custody had not been obtained by fraud or other deceptive means.
Mr. Briscoe first learned of the divorce and injunction when he returned on August 18; Mrs. Briscoe called him on his car phone and warned him not to come home. He drove home despite the TRO. Mrs. Briscoe called the police, who refused to make him leave; consequently, she moved out with the children, initially stayed with her friend, Lisa Tidwell, and later rented a two-bedroom apartment where they resided at the time of trial.
On August 19, Mr. Briscoe obtained an order setting aside the TRO. On August 26, he filed a reconventional demand seeking an article 102 divorce and joint custody designating him as domiciliary parent. He filed for a TRO and a rule to show cause on September 4, 1992. Additionally, each party requested child support. Because the rule date was continually reset by both parties, the trial court issued an interim order in October 1992 granting Mrs. Briscoe provisional custody with visitation for Mr. Briscoe, child support of $221.30 per week, alimony pendente lite of $70 per week, and enjoining both parties from harassing each other or the children and disposing of, alienating or mortgaging community property. In November 1992, Mr. Briscoe filed a motion to compel discovery; no hearing was held and no order compelling Mrs. Briscoe to answer the interrogatories was issued. In February 1993 Mr. Briscoe filed a rule for final divorce under article 102. Mrs. Briscoe answered *1003 and also requested permanent alimony. She filed her own rule for final divorce on April 6.
Shortly after the physical separation, Mr. Briscoe hired James Lee, a private investigator, to watch Mrs. Briscoe's interaction with the children. Mr. Lee observed them several days a week from about 3:30-9:00 p.m. for approximately five months. Mr. Lee noted Mrs. Briscoe's pattern of leaving the children with her mother. Mr. Briscoe was concerned with the children's emotional state because of the separation and brought them to Dr. Susan Vigen, a psychologist, for evaluations. Dr. Vigen spoke to each child individually, and later attested to Mr. Briscoe's involvement and nurturing relationship with them. Dr. Vigen did not speak to Mrs. Briscoe; however, based on her interview with the children and their comments, she found that Mrs. Briscoe was less responsive to their needs.

TRIAL COURT ACTION
Following a six-day trial spanning two weeks in April 1993, the trial court prepared a written opinion and rendered its final judgment granting the divorce, awarding joint custody naming Mr. Briscoe the domiciliary parent and denying Mrs. Briscoe permanent alimony. Mr. Briscoe was awarded the exclusive use and occupancy of the family home pending partition of the community. The judgment also required Mr. Briscoe to pay child support of $1,364.72 to Mrs. Briscoe for her care of the children between August 14, 1992 and April 19, 1993, subject to a credit for any prior payments, and $300 per month alimony pendente lite retroactive to August 14, 1992 and terminating upon judgment of divorce. Additionally, the trial court ordered each party to pay a percentage of child support (Mrs. Briscoe, 12 percent of the children's expenses or $217.28 a month and Mr. Briscoe, 88 percent or $1,587.38 a month). The court ordered Mr. Briscoe to continue to maintain the children's medical insurance through his employer, and held Mrs. Briscoe responsible for 12 percent of any uncovered medical expenses.
In its written opinion, the trial court supported its resolution of both procedural and substantive issues. Procedurally, the court dealt with the exclusion of evidence at trial. It found that Mr. Briscoe's wiretapping was prohibited under La.R.S. 15:1303, and thus excluded the tapes pursuant to La.R.S. 15:1307. The court also found, based on an eyewitness's testimony and strong circumstantial evidence, that Agnes Kudolis (Mrs. Briscoe's mother) and Lisa Tidwell (a friend of Mrs. Briscoe's) along with Mrs. Briscoe had violated the sequestration order and excluded Kudolis's and Tidwell's testimony in accord with La.C.E. art. 615B.
Substantively, the trial court examined in great detail each factor under La.C.C. art. 131C(2) and concluded that Mr. Briscoe was best suited to be the domiciliary parent. The court determined that Mr. Briscoe surpassed Mrs. Briscoe in virtually every category. Based on the evidence adduced at trial, the court found that Mr. Briscoe successfully demonstrated his devotion to his children, and his active and positive role in their lives. In contrast, the evidence portrayed Mrs. Briscoe as a "selfish and materialistic person."
The trial court found that Mrs. Briscoe was not free from fault in the termination of the marriage and thus not entitled to permanent alimony. The court determined that she had "blatantly lied" and had deceived the court in her affidavit for provisional custody. It resolved all credibility questions against her. Regarding fault, the court found that she had tried to provoke Mr. Briscoe into leaving home; her schemes included frequenting late-night bars with friends and flirting with other men, refusing sexual relations and running up excessive credit card balances. After these plans failed, she tried to gain custody of the children and force Mr. Briscoe out of the home by falsely obtaining provisional custody and a TRO. As a last resort, she took the children and moved out of the home.

DISCUSSION
Mrs. Briscoe appeals, specifying 11 assignments of error. Her first two assignments address the trial court's exclusion of witnesses. By her third assignment, she argues that the trial court erred in limiting the amount of time she had to proffer the excluded *1004 testimony. Her fourth and fifth assignments concern the trial court's rulings on evidence obtained from Mr. Briscoe's wiretapping. Sixth, she alleges the trial court erred in limiting her cross examination of Mr. Briscoe. Seventh, she asserts that the trial court erroneously disregarded testimony regarding Mr. Briscoe's propensity for violence. Eighth, she contends the court improperly assigned her the burden of proof. Ninth, she urges that the cumulative effect of these errors deprived her of procedural due process. Finally, by her tenth and eleventh assignments, she argues that the trial court was clearly wrong to name Mr. Briscoe domiciliary parent and deny her permanent alimony.

EXCLUSION OF WITNESSES
By her first assignment, Mrs. Briscoe urges the trial court erroneously excluded witnesses whose identities were not disclosed to opposing counsel prior to trial; the court permitted her only five witnesses, herself included. By her second assignment, she argues the trial court further erred in excluding Lisa Tidwell and Agnes Kudolis from the original five witnesses, for violating the sequestration order.
On the first day of trial, Mr. Briscoe objected to Mrs. Briscoe calling any witnesses other than Agnes Kudolis, Lisa Tidwell and herself because Mrs. Briscoe never answered defendant's interrogatories requesting a witness list; she provided these three names by telephone. Mrs. Briscoe argued that the objection was barred and the trial court could not exclude witnesses pursuant to La.C.C.P. art. 1471 because Mr. Briscoe did not obtain an order compelling her to answer; however, the trial court did initially sign an order directing her to answer the interrogatories. See Reconventional Demand and Order, R.p. 20. The trial judge asked Mrs. Briscoe whom she intended to call. She stated that her only other witnesses were Mr. and Mrs. Reynolds and Yvonne Rasberry (who testified for the defense). Ultimately, Mr. Briscoe withdrew the objection, obviating a court ruling; the Reynoldses testified.[1] However, near the close of plaintiff's case, Mrs. Briscoe implied that she had "other" witnesses she wished to call, but felt she was prohibited from doing so because of the court's inclinations. She never named or attempted to call these alleged witnesses. The issue was not squarely presented and plaintiff rested.
On appeal, Mrs. Briscoe argues that the court erred in excluding witnesses because she failed to respond to the interrogatories. On the contrary, we note the trial court explicitly rejected Mrs. Briscoe's suggestion at trial that it excluded witnesses for this reason. R.p. 556. Moreover, the trial court never ruled on Mr. Briscoe's objection because he withdrew it. Regardless, Mrs. Briscoe failed to proffer the testimony of the unnamed witnesses. When a party complains on appeal of improperly excluded evidence, that party must proffer that evidence. Failure to do so results in a waiver of the right to complain of the exclusion on appeal. Goodwin v. Goodwin, 618 So.2d 579 (La. App.2d Cir.), writ denied, 623 So.2d 1340 (1993); Seltzer v. Seltzer, 584 So.2d 710 (La. App.4th Cir.1991), writs denied, 588 So.2d 1119, 20 (1992). Without a proffer of the unnamed witnesses' testimony, we cannot address whether any alleged exclusion prejudiced Mrs. Briscoe. Goodwin, supra. This issue does not present reversible error.
Next, Mrs. Briscoe contends the trial court's response to the sequestration violation was extreme. She argues that La.C.E. art. 615B allows disqualification of a witness only as a last resort when lesser sanctions are insufficient.
Article 615B provides that a court may impose appropriate sanctions for violations of its exclusion order including contempt, appropriate instructions to the jury, or when such sanctions are insufficient, disqualification of the witness. Comment (f) explains that when a party has had no knowledge of the violation and has played no role in bringing it about, disqualification unjustly impairs his case (emphasis added). *1005 The Louisiana Supreme Court, while recognizing that disqualification is a drastic remedy, specifically approves the measure, however, when the sequestration violation was committed with the consent, connivance, procurement or knowledge of the party calling the witnesses. State v. Trahan, 576 So.2d 1 (La.1990); also see Coutee v. American Druggist Ins. Co. of Cincinnati, 453 So.2d 314 (La.App. 3d Cir.), writ denied, 458 So.2d 477 (1984).[2] The particular remedy imposed for sequestration violations rests within the sound discretion of the trial court. State v. Beach, 610 So.2d 908 (La.App. 1st Cir.1992), writ denied, 614 So.2d 1252 (1993).
Around noon on April 7, 1993, Thomas Wilson, Jr., a local attorney, saw three women having lunch at the Milam Street Cafe and recognized one, Mrs. Briscoe, from the courthouse. Mr. Wilson noticed small index cards spread out on their table. He described their actions as brief little conversations, which appeared to be led by Mrs. Briscoe, followed by a flurry of writing by the other two women, later identified as Lisa Tidwell and Agnes Kudolis. Furthermore, Ms. Kudolis admitted that some of her cards were written by her daughter, Mrs. Briscoe, but explained that she had merely recopied them more legibly during lunch. Several of Ms. Kudolis's cards, containing notes on her proposed testimony, were admitted into evidence. All three women denied discussing the case at lunch. Based on his evaluation of the witnesses' credibility and the evidence presented, the trial judge concluded that the witnesses had violated the sequestration order. He ordered Ms. Tidwell's prior testimony to be stricken from the record and disqualified Ms. Kudolis pursuant to C.E. art. 615B. The record in this case supports the trial court's finding that the violation was deliberate and committed with the full knowledge, consent and participation of plaintiff. Considering Mrs. Briscoe's participation in the flagrant violation and the trial court's wide discretion in choosing an appropriate remedy, we cannot conclude that its action here, disqualifying Ms. Tidwell and Ms. Kudolis, was manifestly erroneous.

PROFFER
By this assignment, Mrs. Briscoe alleges that the trial court erred in not allowing her to proffer Ms. Kudolis's or the remainder of Ms. Tidwell's testimony. Specifically, she objects to the following emphasized language:
COURT: He's in a proffer and he can do it whichever waymy deal with the proffer is you can do itdealer's choice. If you want to do it by stipulation as to what they would testify to if they were called to testify, you can do that. If you want to have them come in here, that depends on the time limitations, you're talking about putting the witness on the stand for a half a day to do a proffer, that ain't going to work. But a reasonable time period, you want them on the witness stand, fine. R.p. 554 (emphasis added).
When the court rules against the admissibility of any evidence, it shall either permit the party offering the evidence to make a complete record thereof or to make a statement setting forth the nature of the evidence. At the request of any party, the court may also allow the excluded evidence to be offered on the record during a recess or at any other time it designates. La.C.C.P. art. 1636 A, B. The trial court has the power to conduct the proceedings in an orderly and expeditious manner. La.C.C.P. art. 1631. A trial judge has great discretion in the manner in which proceedings are conducted before his court, and it is only upon a showing of gross abuse of discretion that appellate courts intervene. Harris v. West Carroll Parish School Board, 605 So.2d 610 (La. App.2d Cir.), writ denied, 609 So.2d 255 (1992).
Our review of the record shows that the trial court gave Mrs. Briscoe the opportunity to proffer the excluded testimony, even calling it "dealer's choice." R.p. 554. *1006 At most, the trial court merely placed reasonable time limits should she call the witnesses to the stand. Instead, Mrs. Briscoe indicated that she would make a statement. The court asked her if she wanted to "do it now and just get it over with." R.p. 553. The record shows that Mrs. Briscoe could have proffered the excluded testimony, but simply failed to do so, and ultimately proffered only the portion of testimony already given by Ms. Tidwell. We find no abuse of discretion.

WIRETAPPING
Mrs. Briscoe alleges in her fourth and fifth assignments that the court erroneously "heard" illegally obtained tape recordings and that her testimony was tainted by playing these tapes. She urges her testimony was tainted because first, Mr. Briscoe played the tapes to impeach her and second, he asked questions based on information and knowledge derived from the tapes.
During cross examination of Mrs. Briscoe, the trial court allowed Mr. Briscoe to play parts of the recorded telephone conversations for her in an attempt to impeach her testimony. When Mr. Briscoe first sought to play portions of the tapes, Mrs. Briscoe objected to "foundation," contending she had not denied making the statement at issue and vaguely questioning the origin and accuracy of the tapes. R.p. 216. The trial court overruled her foundation objection and, to insure the tapes' authenticity, instructed that Mrs. Briscoe first be allowed to listen to the recorded portion at issue, refresh her recollection and confirm her voice on the tape and the accuracy of the statement. If she denied it was her on the tape or complained that the tape had been altered, the court stated it would then address the authenticity of the tapes. R.p. 220. On each occasion, however, Mrs. Briscoe readily admitted that it was indeed her voice on the tape and never complained that the tapes were inaccurate. Portions of the recordings were then played for the court. Mrs. Briscoe raised no other objections at this time to Mr. Briscoe playing the tapes. Later, on cross examination of Lisa Tidwell, Mrs. Briscoe objected to the taped conversations being played to impeach Ms. Tidwell. However, at this point she specifically argued that they were illegally obtained under the wiretapping statutes. R.pp. 386-87. The trial judge expressly noted the distinction between this objection and her former objection to foundation, halted proceedings, heard evidence on the issue and ultimately ruled that the tapes were inadmissible under R.S. 15:1301 et seq. R.p. 537. He struck from the record any portion of the tapes that had been played in court. Counsel for Mrs. Briscoe assured the court that no other witnesses were subject to impeachment by the tapes.
Prior inconsistent statements can be used to attack the credibility of a witness unless the court determines that the probative value of the evidence on the issue of credibility is substantially outweighed by the risks of undue consumption of time, confusion of the issues, or unfair prejudice. La.C.E. art. 607D(2). Tape recordings may be admissible as prior inconsistent statements. Landry v. Doe, 582 So.2d 242 (La.App. 1st Cir.1991). A witness may be confronted with his own prior inconsistent statement once the proper foundation has been laid. Burford v. First National Bank in Mansfield, 557 So.2d 1147 (La.App. 2d Cir.1990). If the witness fails to distinctly admit the particular statement, extrinsic evidence of the prior inconsistent statement is admissible. La.C.E. art. 613 (emphasis added).
The record shows that Mrs. Briscoe's prior inconsistent statements made during telephone conversations were specifically used to impeach her credibility. Mrs. Briscoe confirmed it was her voice on the tape, but did not distinctly admit making the statements; therefore, defendant played her taped statements, which bore directly upon the credibility of her testimony. Mrs. Briscoe did not at this time argue that the tapes were illegally obtained. The trial court correctly considered her sole objection to foundation. The trial court determined that Mr. Briscoe had sufficiently complied with the requirements of C.E. art. 613, and that the proper foundation was laid for impeachment purposes. See Sutton v. Fleming, 602 So.2d 228 (La.App. 3d Cir.1992). Moreover, Mrs. Briscoe plainly admitted that the voice on the tape was her own and correctly reflected *1007 what she had said. This effectively resolved any issue as to the identity or authenticity of the tapes. On this record, we conclude that the trial court properly allowed Mrs. Briscoe's prior inconsistent statements as impeachment evidence under La.C.E. art. 607D(2).
Although the trial court later ruled in her favor, excluding the tapes from evidence and striking any portions already reproduced in the record, Mrs. Briscoe contends that her testimony was "tainted" by the illegal tapes, and submits in brief that the court should have "excluded from its mind" all tainted portions. The record reflects, however, and the trial court noted, that Mrs. Briscoe lodged no contemporaneous objection based on illegality to prohibit reference to the tapes during her own testimony. La.C.E. art. 103A(1). Mrs. Briscoe first raised this objection two days later during the cross examination of another witness. It is well settled that if an objection to a question posed to a witness or to introduction of other evidence is not raised at a time when the error in allowing the question or admitting the evidence can be corrected, the objection is waived. Airline Construction Co. v. Ascension Parish School Board, 568 So.2d 1029, 1035 n. 8 (La.1990). As soon as Mrs. Briscoe objected to the legality and use of the tapes, the trial court ruled that any excerpts from the tapes reproduced in the record would be stricken. However, the court refused to strike responses from Mrs. Briscoe or counsel's questions associated with the tapes because no contemporaneous objection was made. Had Mrs. Briscoe objected timely perhaps any error could have been corrected; by failing to object when she was being questioned however, she waived the objection with regard to her testimony. The trial court's ruling was not in error.

LIMITATIONS ON CROSS EXAMINATION OF MR. BRISCOE
By her sixth assignment, Mrs. Briscoe contends that the trial court erred in placing time limitations on her cross exam of defendant, preventing her from eliciting relevant testimony.[3] We disagree. The allegedly objectionable language (emphasized below), when read in context with the entire statement, clearly shows that the trial court was merely attempting to conduct the proceedings efficiently by eliminating irrelevant and time-consuming questioning. Unquestionably, the court has the power to require that the proceedings be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings so that justice is done. La.C.C.P. art. 1631 A. Moreover, the court shall exercise reasonable control over the mode and order of presenting evidence so as to avoid needless consumption of time. La.C.E. art. 611A(2), Goodwin v. Goodwin, supra. We find no manifest error.

RELEVANCY OF EVIDENCE
By this assignment, Mrs. Briscoe alleges that the trial court erred in finding that her testimony about a physical altercation eight years ago with Mr. Briscoe was too remote and attenuated to be relevant to these proceedings.
Relevant evidence is defined as evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence. La.C.E. art. 401. Remoteness between a prior incident and the instant action is one factor to consider when weighing probative value and relevancy. La.C.E. art. 403; State v. Jackson, 625 So.2d 146 (La.1993). Passage of time will not necessarily defeat admissibility; however, the determination must be made on a case by case basis, taking into account the particular facts of every individual case. State v. Jackson, supra. A trial judge has broad discretion in determining the relevancy of evidence, and his ruling *1008 will not be overturned on appeal absent a clear showing of an abuse of that discretion. State v. Miles, 402 So.2d 644 (La.1981); Polotzola v. Missouri Pacific R. Co., 610 So.2d 903 (La.App. 1st Cir.1992).
Mrs. Briscoe testified that about eight years ago Mr. Briscoe punched her in the face. The trial judge, stating that eight years was rather remote in time from the instant suit, questioned the witness further. Mrs. Briscoe admitted that they reconciled and she continued to live with him after the incident. Moreover, she stated that this was an isolated incident; he never hit her again. The trial judge heard the evidence, but on the particular facts in the instant case, deemed it non-probative. This was not a manifest abuse of discretion.

BURDEN OF PROOF
In her eighth assignment of error, Mrs. Briscoe contends the trial court erred in requiring her to sustain the burden of proof on the question of custody. As evidence of this, she points to the trial court's written reasons for judgment, wherein he called her sworn statement alleging a physical separation a "blatant lie" and stated she "started out on the wrong foot" by the deception in her pleadings. She argues that both parents are on "equal footing" and share equally the burden of proof in custody proceedings. Warren v. Warren, 617 So.2d 545 (La.App. 2d Cir.), writ denied, 620 So.2d 846 (1993).
As noted by Mr. Briscoe, however, the trial court's remarks appear in the permanent alimony/fault section of its reasons for judgment. As specifically stated by the court at the outset of its alimony discussion, the claimant, Mrs. Briscoe, bears the burden of proving freedom from fault. La.C.C. art. 112; Adams v. Adams, 389 So.2d 381 (La. 1980); Currier v. Currier, 599 So.2d 456 (La.App. 2d Cir.1992); Taylor v. Taylor, 579 So.2d 1142 (La.App. 2d Cir.1991); Green v. Green, 567 So.2d 139 (La.App. 2d Cir.1990). Mrs. Briscoe cites no evidence, and we find none, that the trial court placed on her the burden of proof in the custody dispute. This assignment lacks merit.[4]

CUSTODY
Mrs. Briscoe contends that the trial court erred in naming Mr. Briscoe the domiciliary parent of their three minor children. She also asserts that it afforded too much weight to Mr. Briscoe's witnesses' testimony.
The primary consideration in rendering a child custody determination is the best interest of the child. La.C.C. art. 131. At the time of this trial, Louisiana law established a rebuttable presumption in favor of joint custody.[5] A trial judge must weigh and balance all factors favoring or opposing *1009 custody based on the evidence presented in each particular case. Windham v. Windham, 616 So.2d 276 (La.App. 2d Cir.), writ denied, 620 So.2d 875 (1993). In a child custody case, the determination of the trial judge will not be disturbed absent a clear showing of abuse of discretion. Thompson v. Thompson, 532 So.2d 101 (La.1988); Wyatt v. White, 626 So.2d 816 (La.App. 2d Cir. 1993). An appellate court is required to extend great weight to the factual conclusions of trial courts which are based on reasonable evaluations of credibility and reasonable inferences of fact. Wyatt, supra; Rosell v. ESCO, 549 So.2d 840 (La.1989).
To determine custody in the instant case, the trial judge scrutinized every factor listed in article 131C(2). The court heard long and varied testimony from numerous witnesses regarding both parents' relationship with the children. The court's well-analyzed and detailed written findings of fact revealed that although both parties love the children and are able parents, Mr. Briscoe surpassed Mrs. Briscoe in virtually every category.
The trial court was particularly impressed with Mr. Briscoe's witnesses. Yvonne Rasberry, the Briscoes' maid, testified that Mrs. Briscoe would frequently leave the children with her during the day and have lunch with friends. Ms. Rasberry normally arrived in the mornings around 10:00, but testified that most days Mrs. Briscoe was still in bed or getting ready to meet her friends; either Ms. Rasberry or Mr. Briscoe would make the children's breakfast. Mr. Briscoe's friends testified to his close relationship with his children. Carl Rice, a long-time friend, testified he believed that Mr. Briscoe was the more nurturing parent. Dr. Susan Vigen, a psychologist, corroborated this. She testified based on her interviews with the children that Mrs. Briscoe was less responsive to their needs; in contrast, all of the children perceived Mr. Briscoe as a nurturing figure. The trial court considered both John Wisby, a business partner, and Gary Dooley, the family's barber, to be excellent witnesses. Both witnesses related instances where they observed Mr. Briscoe's love and concern for his children. For example, during a business meeting with Mr. Wisby at his home, Mr. Briscoe learned that his oldest son may have broken a window, immediately went to resolve the problem, and returned to Mr. Wisby 30 minutes later. In addition, the evidence revealed that Mr. Briscoe was actively involved in his children's activities, spending time with them when he came home from work, helping with homework, eating lunch with them at school and coaching them in sports.
In sharp contrast, the court noted disturbing testimony that Mrs. Briscoe and her mother had attempted to influence Lauren's testimony at trial, that Mrs. Briscoe often made hateful remarks to the children about their father, and that Mrs. Briscoe said she wanted the children so she could collect child support and remain unemployed. The court was also troubled by the testimony of Mr. Lee, the private investigator, that after the parties physically separated, Mrs. Briscoe often left the children with her mother in the afternoons and did not return until around 9:00 p.m. This was consistent with her pre-separation behavior as noted above. Based on the evidence, the court characterized Mrs. Briscoe as rather selfish and materialistic as compared to Mr. Briscoe, who made his children a priority.
Mrs. Briscoe argues that the court erred in failing to consider Mr. Briscoe's alleged lack of moral fitness (illegal wiretapping) and the young ages of the children involved. We disagree. The court weighed the evidence in its entirety and determined that it was in the best interest of the children to award joint custody with Mr. Briscoe as the domiciliary parent. The trial court found Mr. Briscoe's witnesses' testimony to be credible and compelling. In light of the record evidence and the trial court's broad discretion in making factual and credibility determinations, we do not find that the court abused its discretion in awarding custody jointly to Mr. and Mrs. Briscoe and designating Mr. Briscoe as the domiciliary parent.

PERMANENT ALIMONY
Mrs. Briscoe contends that she was free from fault and that the trial court was clearly wrong not to award her permanent alimony.
*1010 Permanent alimony may only be awarded to a spouse who has not been at fault in the termination of the marriage. La. C.C. art. 112; Adams, supra; Mathews v. Mathews, 614 So.2d 1287 (La.App. 2d Cir. 1993). The spouse seeking permanent alimony has the burden of proving freedom from fault. Guillory v. Guillory, 626 So.2d 826 (La.App. 2d Cir.1993).
"Fault" contemplates misconduct of a serious nature, rendering the marriage insupportable. Brewer v. Brewer, 573 So.2d 467 (La.1991). Fault for purposes of alimony preclusion continues to include the grounds enumerated in former C.C. art. 138 (adultery; conviction of a felony; habitual intemperance or excesses; cruel treatment or outrages; public defamation; abandonment; an attempt on the other's life; status as a fugitive; and intentional non-support), and is not limited to the fault grounds currently listed in C.C. art. 103 (adultery or a felony conviction). Mathews, supra.
The claimant spouse, however, need not be totally blameless in the marital discord. Only misconduct of a serious nature, providing an independent contributory or proximate cause of the breakup, equates to legal fault. Adams, supra; Pearce v. Pearce, 348 So.2d 75 (La.1977). Because fault is a factual finding turning largely upon a trial court's evaluations of credibility, it will not be disturbed on appeal unless manifestly erroneous. Guillory, Mathews, supra.
Mrs. Briscoe argues in brief that she was justified in leaving the family home because her husband's wiretapping constituted cruel treatment; therefore, she cannot be guilty of abandonment. The record evidence clearly shows, however, that long before Mr. Briscoe began recording her conversations in April 1992, Mrs. Briscoe's behavior had been intolerable; as noted by the trial court, she was obviously trying to provoke her husband to leave. In 1990, Mrs. Briscoe flatly told her husband that she no longer loved him and wanted a divorce. Mr. Briscoe, however, did not want a divorce and suggested they try marriage counseling. Mrs. Briscoe finally agreed and reluctantly attended one session; according to Mr. Briscoe, she became hostile, told the therapist that she had no intention of working on the marriage, and left before the session ended. Mr. Briscoe attended marriage communication classes alone at St. Mark's Church. Mr. Briscoe testified that his wife became more aggressive and uncooperative; she would tell him she hated him, he was boring, she wished she had never married him and to "just leave." Mrs. Briscoe started frequenting bars with her friends until two or three in the morning, dancing with other men, and telling Mr. Briscoe how much she enjoyed dancing with them. She told him in July of 1991 that she would no longer have sexual relations with him. In the spring of '92, she embarked on a spending spree, charging excessive amounts to her credit cards; Mr. Briscoe, as usual, paid the bills since Mrs. Briscoe was unemployed. Finally, Mrs. Briscoe took legal action against him when he left town for a few days on business, enjoining him from entering their home.
As in most domestic cases, the parties' testimony on fault occasionally conflicted. The trial judge resolved all credibility calls against Mrs. Briscoe, based on the following. Mrs. Briscoe intentionally deceived the court in order to obtain a TRO and provisional custody; she was impeached with telephone records at trial when she claimed she had consistently attempted to reach her husband in Florida to tell him about the restraining order; she blatantly violated the court's sequestration order; and she tried to influence her eight-year-old daughter, Lauren, to tell the judge she wanted to live with her. Finding Mr. Briscoe to be the more credible spouse and accepting his testimony over Mrs. Briscoe's was well within the trial court's prerogative.
The trial court concluded that Mrs. Briscoe failed to prove she was free from fault in the termination of the marriage. The record in the instant case supported the findings of Mrs. Briscoe's cruel behavior toward her husband, violative of the marital relationship, and contributing, in large part, to the destruction of the marriage. On this record, we cannot say that the trial court was clearly wrong or manifestly erroneous in denying Mrs. Briscoe permanent alimony.

*1011 CONCLUSION

For the reasons expressed, the trial court judgment is affirmed. Costs of appeal are assessed against Mrs. Briscoe.
AFFIRMED.
NOTES
[1] Before Mr. Briscoe withdrew his objection, the trial court stated that it was inclined to allow all subpoenaed witnesses to testify because they should have been known to opposing counsel; the Reynoldses were subpoenaed. Coignet v. Deubert, 413 So.2d 253 (La.App. 4th Cir.1982).
[2] Coutee was based on former La.C.C.P. art. 1631. Amended by La. Acts 1988, No. 515, § 2, eff. January 1, 1989. La.C.E. art. 615B now expressly provides for disqualification upon violation of sequestration.
[3] The trial court specifically stated "[f]rom here on out, I'm going to put this in rawhide mode. I'm going to jump in. On something like that, if Mr. Fortson doesn't object, I'm going to object; and if you get redirect, the same thing. I mean this is the fifth day of this, and where money comes from to buy paintings doesn't contribute to the mission, as far as I'm concerned." R.p. 954.
[4] We note that Mrs. Briscoe was afforded a full evidentiary hearing (six-day trial). In any event, having determined that all of the trial court's evidentiary rulings assigned as error were, in fact, correct, we pretermit discussion of Mrs. Briscoe's ninth assignment wherein she contends that the court's procedural errors cumulatively deprived her of procedural due process.
[5] La.C.C. art. 131C(2) listed the following factors to determine the best interest of the child:

(a) The love, affection, and other emotional ties existing between the parties involved and the child.
(b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his religion or creed, if any.
(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care, and other material needs.
(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.
(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.
(f) The moral fitness of the parties involved.
(g) The mental and physical health of the parties involved.
(h) The home, school, and community record of the child.
(i) The reasonable preference of the child, if the court deems the child to be of sufficient age to express a preference.
(j) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent.
(k) The distance between the respective residences of the parties.
(l) Any other factor considered by the court to be relevant to a particular child custody dispute. However, the classification of persons according to race is neither relevant nor permissible.
This article has since been amended by La.Acts 1993, No. 261 eff. January 1, 1994. The revised article apparently abrogates the presumption in favor of joint custody.