TOBIAS, J.,
concurs and assigns reasons.
hi respectfully concur. I write separately because my view of the law applicable to this case varies from that of the majority.
I start with La. C.C.P. art. 4547, which states:
An interdiction proceeding shall be heard summarily and by preference. The defendant has a right to be present at the hearing and the court shall not conduct the hearing in his absence, unless the court determines that good cause exists to do so. The defendant *962 has the right to present evidence, to testify, to cross-examine witnesses, and to otherwise participate at the hearing. If the defendant is unable to come to the courthouse for the hearing, the judge may hold the hearing where the defendant is located. The hearing may be closed for good cause. The court may call witnesses not called by the parties and may require the presence of a proposed curator. [Emphasis supplied.]
Like the majority, I agree that Mr. Benson had the right to refuse to testify. I would not, however, resort to New York law and jurisprudence to support that conclusion. Rather, such a conclusion is implicit in the language of article 4547.
However, not only did Mr. Benson consent to being interviewed/examined by physicians-psychiatrists—for purposes of this case, but he also voluntarily 12testified under oath[1] before the trial judge on 20 April 2015 (the so-called “‘Watermeier* hearing” discussed infra) some six weeks before the actual interdiction trial commenced on 1 June 2015. Once he did so, he waived his right to refuse to be examined under oath on the record by any other party. Therefore, it was error for the trial court to refuse to allow plaintiffs’ counsel to examine him. But my analysis does not end there.
The “Watermeier hearing” that the trial court held where the trial court examined Mr. Benson is not authorized by law and I dare say that it has not been jurispruden-tially recognized. My appreciation of the purpose a “Watermeier hearing” is to ascertain whether a child of tender years is capable of testifying truthfully and whether the child should be subjected to cross-examination by counsel for the parties on the issue of custody.[2] A child is not sworn for purposes of the hearing.
In the case at bar, the timing of the “Watermeier hearing” is also relevant. Mr. Benson testified under oath after the three psychiatric professionals (Drs. Sa-kauye, Block, and Thompson) simultaneously examined/interviewed him on 1 April 2015. Thus it is more likely that the psychiatrists formulated at least preliminarily their impressions and opinions of Mr. Benson before the “Watermeier hearing” without the benefit of the transcript from that hearing. It would appear that the trial court had possible reservations about the ability of Mr. |sBenson to withstand cross-examination.[3] If after 20 April 2015 proceedings the trial court preliminarily thought Mr. Benson was competent enough such that interdiction might be unwarranted, why did he not permit plaintiffs’ counsel the right to examine him under oath at trial?
*963 But here the issue of whether the trial court’s decision to refuse plaintiffs’ counsel the right to cross-examine Mr. Benson gets problematic. As noted above, Mr. Benson actually testify under oath before the trial judge with counsel for both sides being present and agreed to be examined/interviewed by psychiatrists, thereby waiving the right to refuse to testify further pursuant to Article 4547. To fall within the ambit of harmless error, a trial court has the obligation to clearly or implicitly state for the record that it needs no further evidence on the matter at issue. This, by implication, appears to be what the trial court did.
As the trial court stated 12 June 2015, the final day of trial:
I had a meeting with Mr. Benson on April 20th at his office, which was conducted for more than an hour. I was able to elicit testimony from him. I was able to ascertain his demeanor. I formed my own impression as to his credibility. And I am satisfied with that being sufficient. [Emphasis supplied.]
As Judge Love stated in Smith v. Pillow-Smith, 10-0167, p. 8 (La.App. 4 Cir. 11/17/10), 52 So.3d 264, 270,
Ms. Pillow-Smith maintains that the trial judge erred in stopping the cross-examination of Mr. Smith after he testified on his own behalf. “When a party complains on appeal of improperly excluded evidence, that party must proffer that evidence.” Briscoe v. Briscoe, 25,-955, p. 6 (La.App. 2 Cir. 8/17/94), 641 So.2d 999, 1004. “Failure to do so results in a waiver of the right to complain of the exclusion on appeal.” Id.
The record reveals that counsel for Ms. Pillow-Smith did not make a formal objection when the trial judge determined that she had heard enough of Mr. Smith’s testimony. Nor did counsel for Ms. Pillow-Smith 14proffer what evidence her continued examination of Mr. Smith would have elicited. [Emphasis in original.]
A proffer is governed by La. C.C.P. art. 1636, which states:
A. When the court rules against the admissibility of any evidence, it shall either permit the party offering such evidence to make a complete record thereof, or permit the party to make a statement setting forth the nature of the evidence.
B. At the request of any party, the court may allow any excluded evidence to be offered, subject to cross-examination: on the record during a recess or such other time as the court shall designate; or by deposition taken before a person authorized by Article 1⅛3⅛ within thirty days subsequent to the exclusion of any such evidence or the completion of the trial or hearing, whichever is later. When the record is completed during a recess or other designated time, or by deposition, there will be no necessity for the requesting party to make a statement setting forth the nature of the evidence.
C. In all cases, the court shall state the reason for its ruling as to the inadmissibility of the evidence. This ruling shall be reviewable on appeal without the necessity of further formality.
D. If the court permits a party to make a complete record of the evidence held inadmissible, it shall allow any other party the opportunity to make a record in the same manner of any evidence bearing upon the evidence held to be inadmissible. [Emphasis supplied.]
In the case at bar, the plaintiffs were required to clearly make a proffer and clearly delineate that which their proffer would show. This they failed to do because plaintiffs’ counsel did not specifically *964 state he was making a proffer regarding what would be elicited if allowed to cross-examine Mr. Benson.[4] All that the plaintiffs’ counsel stated was:
Just for the record, before I close my rebuttal case I would re-urge for the final time that the Court allow me to call Mr. Benson, or that the Court call Mr. Benson specifically to address some of the issues that were brought up in the defense case, particularly the statements made by defense witnesses that he had capacity on January 7th, that he understood what was in | sthe Will or the Powers of Attorney. For the Court to ask him or allow us to ask him to even be able to describe what’s in those, and to be able to ask questions about some of those other issues that the defendant brought up. I can articulate those if you want. I’m guessing you’re not changing your ruling. I’m just making the motion.
⅝ * *
There was a lot of other testimony in the defense case about the things that Mr. Benson said that were relayed by defense witnesses, particularly Mr. Lauscha, Mrs. Benson, Mr. Cordes, which as Your Honor knows, we objected to as hearsay because they were not being called by a party deponent. And to the extent that all those statements were allowed in evidence with no ability to cross-examine him on the voracity of those statements would be of further grounds for my asking the Court for us to be able to call him.
I find that one must balance this against the trial court’s actual limitation placed upon the number of witnesses that it would allow to be called as described by the majority. A trial court has the right to reasonably restrict the number of witnesses it will permit to be called and examined in order to restrict the amount of repetitive evidence. See La. C.E. arts. 103, 401-403. The record before us does not clearly demonstrate to me that the trial court abused its discretion in limiting the number of witnesses.
Under these circumstances, I conclude that the error of refusing to allow plaintiffs’ counsel to cross-examine Mr. Benson must be viewed as harmless.[5]
I have little doubt that Mr. Benson suffers from periodic short-term memory loss. I have no doubt that Mr. Benson’s decision-making ability is not perfect. But then, how many people in the latter years of life do not suffer from both shortcomings? Certainly, individuals of all ages suffer from imperfect decision-making ability from time-to-time. But the test for interdiction is of one of being unable to “consistently” make reasoned decisions. La. C.C. art. 389.
| ^Interdiction should be sought sparingly and pronounced only in those cases where it is clear that no other reasonable means are available to protect the individual sought to be interdicted. In our society, interdiction is often viewed like a form of the scarlet letter “A,”[6] or in this case the scarlet letter “I.”
*965 This ease was tried for eight days in June 2015. We are now many months past that trial and, on the assumption that one of the parties will seek further review of this case from a higher court, it will likely be a few months hence before a final, definitive decision is rendered one way or another on whether Mr. Benson should or should not be interdicted. Nothing prevents an individual with a right of action at a later date to again seek an interdiction of Mr. Benson based upon his then health, just as a decision that would interdict Mr. Benson could be set aside at any time should the impairing condition(s) cease.
Like the majority, I do not find that the trial court’s decision is manifestly erroneous or clearly wrong as a matter of law. Neither I nor this court under the jurisprudence may substitute our view of the conflicting evidence even though I (or we) viewing the evidence in the first instance might have reached a different conclusion. Cf, La. Const, Art. V, § 10(B).

. The transcript of 20 April 2015, appearing as an exhibit in the record on appeal, reflects Mr. Benson was sworn as a witness. Therefore, he was in fact testifying. The trial court’s view that Mr. Benson statements under oath are "not testimony,” because they were not given during the actual trial of the interdiction is peculiar, if not incredible. Moreover, the trial court contradicted itself on this point as described infra.

. In re D.C.M., 13-0085, p. 6 n. 9 (La.App. 1 Cir 6/11/13), 170 So.3d 165, 169, defines a Watermeier hearing:
A “Watermeier hearing” is a hearing in chambers, outside the presence of the parents, but in the presence of their attorneys, with a record of the hearing to be made by the court reporter, to inquire as to the competency of a child to testify as to custody.
See also D.M.S. v. I.D.S., 14-0364, pp. 4-5 (La.App. 4 Cir. 3/4/15), — So.3d —, —, 2015 WL 926777 *2, writ den. 15-0897 (La.6/19/15), 172 So.3d 654.

.Obviously, if during a trial the cross-examination became too vigorous or heated at any point of the proceedings, the trial court could rein in counsel. The trial court has much, if not vast, discretion in that regard.

, Plaintiffs’ counsel obviously understood what is a proffer and how it should be made because proffers were made at various points of the proceedings.

, As a matter of law, the trial court could have merely relied upon the testimony of the two psychiatrists who concluded Mr. Benson need not be interdicted, rejected the entirety of the third psychiatrist's testimony, and rejected the testimony of all other witnesses. Such a conclusion would not be manifestly erroneous unless for some relatively objective reason the two psychiatrists’ testimony was clearly wrong in view of the other evidence in the case.

.The letter worn by the main character, Hester Prynne, on her clothing in Nathaniel Haw *965 thorne’s The Scarlet Letter: A Romance. (1850).