618 So.2d 579 (1993)
Mark Anthony GOODWIN, Plaintiff-Appellee,
v.
Georgiana Russo GOODWIN, Defendant-Appellant.
No. 24588-CA.
Court of Appeal of Louisiana, Second Circuit.
May 5, 1993.
*582 Keene & Glassell, by J. Ransdell Keene, Shreveport, for defendant-appellant.
James L. Fortson, Shreveport, for plaintiff-appellee.
Before VICTORY, BROWN and WILLIAMS, JJ.
VICTORY, Judge.
This case involves a trial of multiple rules filed by Mark Goodwin and Georgiana Goodwin concerning the custody of their two minor children. Ms. Goodwin appeals the trial court's judgment granting Mr. Goodwin (1) sole custody of the children and (2) provisional use and occupancy of the former matrimonial domicile, together with all community movables located therein. We affirm the trial court judgment.

FACTS
The parties physically separated on April 14, 1990 when Mr. Goodwin moved out of the family home. Thereafter, both parties filed actions for legal separation which included incidental demands pertaining to alimony, child custody and use of the family home. These actions were consolidated and on August 30, 1990, a consent judgment was entered granting, among other things, joint custody to the parties with Ms. Goodwin designated as domiciliary parent, and use and occupancy of the family home to Ms. Goodwin. This judgment was signed on November 12, 1990.
On November 27, 1990, Mr. Goodwin filed a rule for contempt, claiming Ms. Goodwin violated the terms of the joint custody plan. On December 4, 1990, the trial court found Ms. Goodwin in contempt for her repetitive harassment of Mr. Goodwin. Finding Ms. Goodwin intentionally did not comply with the provisions of the joint custody plan, the court sentenced her to five days in the parish jail, which was suspended subject to her good behavior for one year.
On March 6, 1991, Mr. Goodwin filed a rule for contempt, a change of custody, and use and occupancy of the family home. On April 9, 1991, the trial court appointed Dr. Donita Gothard, a psychologist, to examine the litigants and their children. Ms. Goodwin also filed a rule seeking (1) an award of sole custody; (2) authorization to remove the children to Florida; (3) increase in child support; and (4) to have Mr. Goodwin held in contempt for violation of an injunction previously issued by the court. Thereafter, the parties were divorced on June 20, 1991, but the issues pertaining to custody, use and occupancy of the family home, and contempt were scheduled for trial August 29, 1991.
On August 29, 1991, the court began hearing evidence pertaining to the rules filed by both parties. Prior to trial, the trial court entered an oral order of trial pursuant to LSA-C.C.P. Art. 1631, in which he limited the trial to eight days, later allocating equal time to each litigant.

FINDINGS OF THE TRIAL COURT
In a lengthy opinion, the trial judge awarded Mr. Goodwin sole custody of the children finding that Ms. Goodwin was not willing, nor able, to facilitate and encourage a close and continuing parent-child relationship between Mr. Goodwin and the children. The court found that Ms. Goodwin's degree of animosity demonstrated toward *583 Mr. Goodwin could not support an award of joint custody, due to the lack of proper communication and a barrage of inappropriate statements by Ms. Goodwin about Mr. Goodwin, frequently in front of the children. The court also awarded Mr. Goodwin provisional use of the former matrimonial domicile and all community movables therein, noting that a prior award under LSA-R.S. 9:374(B) can be modified in the best interest of the family. Both contempt rules were dismissed.

TIME LIMITATIONS PURSUANT TO LSA-C.C.P. ART. 1631
On appeal, Ms. Goodwin claims the trial judge erred by limiting the trial to eight days, and her trial time to 15.7 hours for the presentation of her evidence. Appellant claims her due process rights under La. Const. Art. 1 § 22[1] have been violated, in that she was denied a full and complete trial. She claims that due to the time constraints imposed, she was unable to call several witnesses she otherwise would have called.
LSA-C.C.P. Art. 1631 provides in relevant part:
A. The court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial, so that justice is done.
The court's power under LSA-C.C.P. Art. 1631 to control trial proceedings is limited by the phrase "so that justice is done." Further, the due process clauses of the Louisiana Constitution and the Fourteenth Amendment to the United States Constitution guarantees litigants a right to a fair hearing. However, "due process" does not mean litigants are entitled to an unlimited amount of the court's time.
With today's overcrowded dockets, some trial judges, seeking to cut down the length of trials in cases pending before them, have imposed time limits on litigants for the presentation of evidence. Since we have been unable to locate any cases that have specifically discussed this issue under Louisiana law, we use this occasion to set down some general guidelines to be followed by state trial judges in cases where it is felt time limits on the presentation of evidence should be imposed. See "The Hour Glass and Due Process: The Propriety of Time Limits on Civil Trials," 26 University of San Francisco Law Review, 237 (Winter, 1992).
First, we recognize that a litigant generally has a right to present all evidence that he or she possesses with regard to a contested issue at trial that is relevant, admissible, and not cumulative. However, this right is not without exception. L.C.E. Art. 403 provides that relevant evidence may be excluded if its probative value is substantially outweighed by considerations of undue delay or waste of time. The power granted by the Legislature to a judge in LSA-C.C.P. Art. 1631 to require proceedings to be conducted in an "expeditious manner ... so that justice is done" may also be used by a trial judge to ensure that the relevant, admissible, noncumulative evidence is presented in such a way that time will not be unnecessarily wasted.
Second, before imposing time limitations in a case, the trial judge should be thoroughly familiar with the case through pretrial proceedings, including status and pretrial conferences, and discovery. The judge should be familiar with the claims of the parties, the proposed testimony and number of witnesses, and the documentary evidence to be presented. Each litigant should be required to estimate the length of his or her case, and if necessary, the amount of time needed for each witness. Armed with this information, the trial judge should be in a good position to set reasonable time limits for the presentation of the evidence, rather than arbitrary time limits. This is not to suggest that the *584 court should impose limits solely based on the time estimates of the litigants. The judge's familiarity with the case, the propensities of the attorneys involved to waste or conserve time, and the status of his or her caseload are other factors that a court may consider in determining the amount of time that will be allowed for the presentation of the evidence.
Third, if they are used, time limits should normally be imposed on all parties, before any party presents any evidence, and sufficiently in advance of trial for the litigants to prepare for trial within the limits imposed. This guideline promotes even-handed justice, fundamental fairness, and avoids inequities and potential prejudice that might occur if limits are imposed without time to prepare for them, or after a substantial amount of the trial has taken place. Nonetheless, we recognize the right of the trial judge to impose reasonable time limits after the trial has begun if it becomes apparent they have become necessary.
Fourth, the trial judge should inform the parties before the trial begins that reasonable extensions of the time limits will be granted for good cause shown. During the course of the trial, it may become apparent that issues thought to be relatively insignificant have taken on added significance during the trial, that prior estimates by the attorneys and/or the trial court were unduly optimistic, or that unanticipated problems have arisen that require more time. The trial court's flexibility and willingness to grant reasonable extensions of time for good cause shown ensures all litigants and the public that due process is indeed taking place in our courts.
Fifth, the trial judge should develop an equitable method of charging time against each litigant's time limits. Rather than charging each side for the total time used to present its case, the judge should generally charge each party for the time he or she uses, whether it is used on direct or cross-examination. This is not to suggest that the trial court must always give each litigant the same amount of time to present evidence. Although generalizations are difficult in this area, it is not uncommon that one litigant will require more time than the other(s) to present his or her evidence.
Sixth, the trial judge should put all of his rulings regarding time limits and the reasons for the rulings on the record.
We do not suggest that the general guidelines discussed here are exclusive and cover all contingencies that may arise. They are guidelines that provide a general framework for state trial judges to use, along with their common sense and sound discretion, to ensure that the relevant, admissible, noncumulative evidence is presented in a timely fashion so that justice is done.
Here, the trial judge was familiar with the case through discovery and pretrial conferences, and imposed time limits on both parties before trial. The amount of time allocated, over 15 hours of actual trial time for each litigant, appears to be reasonable for the issues involved in the case. He chose an equitable method of charging time against each litigant. We see nothing in the record to suggest that any new issue or unexpected problem arose during the trial requiring an extension of the time limits imposed. The judge kept excellent records of the time used by each litigant and put all rulings and reasons therefore on the record, although the record does not clearly reflect why a total of eight days of trial time was chosen.
According to Ms. Goodwin, however, she was unable to call several pertinent witnesses due to the time constraints. Although the trial court gave the parties a deadline for submitting offers of proof in the form of depositions, Ms. Goodwin did not avail herself of this opportunity. Had a timely proffer been made, this court could then determine whether or not the evidence sought to be introduced was such that prejudice occurred by its exclusion.
Our law is clear and consistent that when a party complains on appeal of improperly excluded evidence, it is incumbent upon that party to have proffered the evidence. Failure to do so results in a waiver of the right to complain of the exclusion on appeal. *585 Seltzer v. Seltzer, 584 So.2d 710 (La.App. 4th Cir.1991), writ denied 588 So.2d 1119 (La.1991); Engineered Mechanical Services, Inc. v. Langlois, 464 So.2d 329 (La.App. 1st Cir.1984), writ denied 467 So.2d 531 (La.1985).
For these reasons, we determine that Ms. Goodwin's complaint that the time limit imposed on her to present evidence violated her due process rights is without merit.

CUSTODY AWARD
Ms. Goodwin also contends the trial court erred in awarding sole custody to Mr. Goodwin primarily based on a finding that Ms. Goodwin's attitude and conduct were "mean and vindictive." Although she agrees that the heavy burden of proof required by Bergeron v. Bergeron, 492 So.2d 1193 (La.1986) does not apply to consent decrees, she contends appellee did not prove that a change in circumstances had occurred since the original decree because the evidence shows she was acting this way before that decree.
This court has often stated that even in the absence of a considered decree, the party seeking to modify a joint custody arrangement must still prove a change in circumstances and that the modification would be in the best interest of the children. Norris v. Norris, 604 So.2d 107 (La. App.2d Cir.1992); Lee v. Davis, 579 So.2d 1130 (La.App.2d Cir.1991); Myers v. Myers, 561 So.2d 875 (La.App.2d Cir.1990). Since the parties consented to the joint custody judgment entered August 30, 1990, Mr. Goodwin was not relieved of showing a change in circumstances and that modification was in the best interest of the children.
For joint custody to work, each parent must be willing and able to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent. Sepulvado v. Sepulvado, 474 So.2d 518 (La.App.2d Cir.1985). Where the testimony of the parties suggest that sufficient animosity and rancor exist between them such that the parties cannot work together to the extent required in a joint custody arrangement, sole custody has been mandated. Draper v. Draper, 556 So.2d 210 (La.App.2d Cir.1990); Murray v. Murray, 521 So.2d 754 (La.App.2d Cir.1988); Preau v. Preau, 499 So.2d 1270 (La.App. 4th Cir.1986). Considering the evidence in this record, it is almost certain that a joint custody decree at this time would be ineffective, only serve to further incite disagreement between the parties, and be detrimental to the welfare of the children.
Although we choose not to go into any great detail, suffice it to say that the record vividly discloses that, since the rendition of the stipulated joint custody decree, the attitude and conduct by Ms. Goodwin toward Mr. Goodwin has been marked by extreme hostility and acrimony, frequently in the presence of their children. Ms. Goodwin's violation of the joint custody agreement is evidenced by the court's contempt ruling on December 4, 1990. Because each parent must be willing and able to facilitate and encourage a close and continuing parent-child relationship for a joint custody arrangement to be successful, we agree with the trial court that Ms. Goodwin's continued animosity, harassment and lack of appropriate communication constitutes an ever worsening change of circumstances that has materially affected the welfare of the Goodwin children. Her claim that Mr. Goodwin did not show a change in circumstances has no merit.
Appellant next submits that the trial court erred in disregarding the testimony and report of Dr. Donita Gothard, the court-appointed expert. Following interviews with all parties involved, Dr. Gothard recommended that joint custodianship of the children be continued, with Ms. Goodwin designated as domiciliary parent, due to the young age of the children and to prevent further upheaval in their lives. Although Dr. Gothard admitted that much of Ms. Goodwin's past behavior was inappropriate and detrimental to the children, she noted that Ms. Goodwin was the only parent who exposed them to church.
In its written opinion, the court expressed disagreement with Dr. Gothard's findings and noted that she only met with *586 parties for 50 minutes each. Although Dr. Gothard opined that joint custody was in the best interest of the children, the trial court, after eight days of testimony to the contrary, concluded that Dr. Gothard did not comprehend the intensity of hatred involved, and therefore, did not realize that joint custody was not an option.
After weighing and evaluating medical and lay testimony, the trial court may accept or reject the opinion expressed by any medical expert. The weight which is to be given expert testimony is dependent upon the professional qualifications and experience of the expert and the facts upon which the opinion is based. Lloyd v. TG & Y Stores Co., 556 So.2d 629 (La. App.2d Cir.1990). The trial judge also has the discretion to substitute his common sense and judgment when such a substitution appears warranted upon the record as a whole. Whitacre v. Halo Optical Products, Inc., 501 So.2d 994 (La.App.2d Cir. 1987). The trial court's evaluation and rejection of Dr. Gothard's testimony and recommendation is not clearly wrong, and therefore, will not be disturbed on appeal. Tyler v. Richardson, 476 So.2d 899 (La. App.2d Cir.1985), writ denied 478 So.2d 907 (La.1985).
Ms. Goodwin also claims the trial court erred by only considering one of the many factors in LSA-C.C. Art. 131(C)(2). She claims that although her willingness and ability to facilitate a close and continuing parent-child relationship between Mr. Goodwin and the children may be lacking in this case, the other factors listed in the custody statute mandate that joint custody of the children be continued.
The court placed major emphasis on its finding that Ms. Goodwin consistently made calculated efforts to destroy Mr. Goodwin's relationship with his children by using them to inflict pain on Mr. Goodwin. The court stated: "The facts in this case are so blatant and serious that this court cannot and will not order joint custody. Mr. Goodwin and Ms. Goodwin cannot communicate at all." The willingness and ability of each of the parents to facilitate and encourage a close and continuing relationship between the children and the other parent is only one factor, albeit an important one, to be considered when evaluating whether joint custody is in the children's best interest.
Another factor found in the statute relied on by the trial judge is the "moral fitness of the parties involved." LSA-C.C. Art. 131(C)(2)(f). The court recognized that Mr. Goodwin's admitted acts of adultery do not, per se, render him morally unfit, if he is otherwise suited for custody, citing, Cooper v. Cooper, 579 So.2d 1159 (La.App.2d Cir.1991). The court found that Mr. Goodwin never exposed the children to any of his adulterous acts, although we note the statute has no requirement that the conduct be performed in the presence of the children in order to be considered as a factor in determining moral fitness.
Further, it is clear that although sexual conduct may be one aspect of a parent's moral fitness, it is not specifically mentioned in the custody statute. "Moral" is defined in Webster's II New Riverside University Dictionary as "of and concerned with the principles of right and wrong in relation to human action and character." Clearly, the phrase "moral fitness" was intended to cover any facts that would show lack of general morality, such as dishonesty, theft, murder, rape, etc., not merely sexual immorality. The trial court explicitly recognized this when he addressed Ms. Goodwin's conduct: "to intentionally damage a child's relationship with his father and to use children as instrumentalities to inflict pain on a former spouse is a serious shortcoming in the area of moral fitness." We agree that Ms. Goodwin's repeated references to Mr. Goodwin as an adulterer in the presence of the children, although true, was "wrong" in the general moral sense, and was properly considered by the trial court as one aspect of Ms. Goodwin's moral fitness. The record reflects the trial court properly considered moral fitness of the parties.
As previously noted, the court failed to state that it had considered any of the other factors listed in LSA-C.C. Art. *587 131(C)(2) in awarding sole custody to Mr. Goodwin. However, a review of the record indicates that the evidence regarding the other factors mentioned in the custody statute is substantially equal, and that both parents are capable of giving the children food, clothing, medical care, love, affection, guidance, etc. Although the evidence reflects that only Ms. Goodwin has attempted to raise the children in their religion, a factor mentioned in LSA-C.C. Art. 131(C)(2)(b), the court apparently determined that this factor was far outweighed by the factors he discussed, a finding that is well within his discretion and not clearly wrong.
The trial court specifically rejected Ms. Goodwin's version of events to the extent that it differed from that presented by other witnesses. Finding her credibility impeached, the trial court stated that her testimony was "unworthy of belief on any point in contentionnot one." The trial judge is in a better position to evaluate the credibility of witnesses and the weight of evidence than an appellate court, which does not hear or see the witnesses. For this reason, a reviewing court should adopt the trial court's finding as its own in the absence of clear error, even if other conclusions from the same evidence were equally reasonable. Harris v. Pineset, 499 So.2d 499 (La.App.2d Cir.1986), writ denied 502 So.2d 114 (La.1987). A trial court's award of custody is entitled to great weight and will not be disturbed on appeal unless an abuse of discretion is clearly shown. Schelldorf v. Schelldorf, 568 So.2d 168 (La.App.2d Cir.1990). We find no error in the trial court's award of sole custody to Mr. Goodwin.

USE AND OCCUPANCY OF HOME
Lastly, appellant claims the trial court erred in modifying the prior consent decree to award use and occupancy of the family home to Mr. Goodwin.
LSA-R.S. 9:374 provides that the court can make an award of the use and occupancy of the family residence "pending further order of the court" and "shall award the use and occupancy ... to the spouse in accordance with the best interest of the family." Clearly, this statute contemplates that a change in custody may require a modification to the award of use of the family home in the best interest of the family. Ordinarily, occupancy by the spouse who has custody of the children is in the best interest of the family. Burrell v. Burrell, 437 So.2d 354 (La.App. 4th Cir. 1983). In this case, the trial court awarded use of the home to Mr. Goodwin so as not to uproot the children from their familiar surroundings. We concur that Mr. Goodwin should have the use of the family home.[2]

DECREE
For the foregoing reasons, we affirm the trial court's award of sole custody to Mr. Goodwin, along with use and occupancy of the family home.
AFFIRMED.
NOTES
[1] La. Const. Art. 1, § 22 provides:

All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights.
[2] Ms. Goodwin also claims the trial court erred in denying her a suspensive appeal from his ruling that ordered her to vacate the home within ten days of the judgment. We need not address this claim as it is clearly moot.