STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

* * * * * * *

2020 CU 0300

BOBBI JO BRIDGES

VERSUS

RYAN CASEY BRIDGES

JUDGMENT RENDERED: _____

NOV 1 0 2020

* * * * * * *

Appealed from the
Twenty-Second Judicial District Court
In and for the Parish of St. Tammany • State of Louisiana
Docket Number 2015-12666 • Division L
The Honorable Dawn Amacker, Judge Presiding

* * * * * * *

| | |
|---|---|
| Robert A. Barnett<br>Covington, Louisiana | ATTORNEY FOR APPELLANT<br>PLAINTIFF—Bobbi Jo Bridges |
| Jeffrey Hoffman<br>Kim N. Nguyen<br>New Orleans, Louisiana | |
| Albert J. Campani, II<br>Kyle Berthelot<br>Madeline Roy<br>Covington, Louisiana | ATTORNEY FOR APPELLEE<br>DEFENDANT—Ryan Casey Bridges |

* * * * * * *

BEFORE: WHIPPLE, C.J., WELCH, AND CHUTZ, JJ.

**WELCH, J.**

The plaintiff, Bobbi Jo Bridges, appeals a trial court judgment in favor of her ex-husband, Ryan Casey Bridges, denying her request to relocate the principal residence of their children to Dubai in the United Arab Emirates. Finding no abuse of the trial court's vast discretion with regard to such matters, we affirm the judgment of the trial court.

## BACKGROUND

The parties were married on March 24, 2000 in St. Tammany Parish and thereafter established their matrimonial domicile in St. Tammany Parish. Of their marriage, three children were born: K.G.B., born April 21, 2001 (who is now a major); J.R.B, born October 9, 2008; and G.P.B., born February 6, 2010. On June 26, 2015, Ms. Bridges filed a petition seeking a divorce and the determination of other incidental matters, including custody of the children, in St. Tammany Parish. The parties were ultimately divorced on October 17, 2016. On November 5, 2018, the parties entered into a consent judgment regarding child custody and a joint custody implementation plan. Therein, Ms. Bridges was awarded primary custody and domiciliary parent designation of K.G.B.; the parties were awarded shared physical custody of J.R.B. and G.P.B on a seven-day/seven-day schedule; Mr. Bridges was designated as the domiciliary parent of J.R.B and G.P.B. as to their educational and extracurricular activities; and Ms. Bridges was designated as the domiciliary parent of J.R.B. and G.P.B. as to their medical care.

On May 14, 2019, Ms. Bridges sent, via certified mail, a letter notifying Mr. Bridges of a potential relocation of the residence of the minor children J.R.B and G.P.B. from St. Tammany Parish to Dubai. Thereafter, in June 2019, Ms. Bridges filed a motion seeking the court's approval to relocate the residence of J.R.B. and

2

G.P.B. with her to Dubai.[1] Therein, Ms. Bridges stated that she had notified Mr. Bridges of the proposed relocation of the minor children's residence, but that Mr. Bridges had refused to give his express written consent, and therefore a contradictory hearing on the relocation was necessary. Ms. Bridges alleged in her motion that the proposed relocation was in good faith because it was based on an employment/career opportunity for her with financial enhancement and that it was in the best interest of the children because of the enhanced educational and extracurricular opportunities available to the children in Dubai. Ms. Bridges further alleged that there had been a change in circumstances materially affecting the welfare of the children since the rendition of the November 5, 2018 stipulated judgment of custody such that a modification of custody was warranted. In this regard, Ms. Bridges pointed to disagreements between the parties concerning the children's health, education, and extracurricular activities; the parties' inability to communicate; and the amount of time the children spend with their paternal grandparents during Mr. Bridges' custodial time. Therefore, Ms. Bridges requested that the trial court approve her request to relocate the minor children's residence to Dubai and to modify the parties' current custodial arrangement to accommodate that relocation.

A hearing on the matter was initially scheduled for August 28, 2019. However, on August 29, 2019 a "Special Setting Case Management Schedule" was issued by the trial court, setting the trial of the matter for September 30, 2019. The case management schedule specifically provided that "[e]ach party [would] have approximately two hours to present their case and/or cross examine their opponent's witnesses." The trial of the matter was then held on September 30, 2019, and at the conclusion of evidence, the trial court took the matter under advisement. On October 10, 2019, the trial court issued oral reasons for judgment,

---

[1] Ms. Bridges asserted that the major child, K.G.B., planned to relocate with her to Dubai.

3

finding that Ms. Bridges met her burden of proving that her request to relocate the minor children's residence to Dubai was made in good faith; however, considering the factors set forth in La. R.S. 9:355.14(A), the trial court found that Ms. Bridges failed to meet her burden of proving that the relocation was in the children's best interest. Therefore, the trial court denied and dismissed Ms. Bridge's request to relocate the residence of the minor children to Dubai. Since Ms. Bridges had already moved to Dubai, the trial court noted that the parties' current custodial arrangement was now unworkable, and therefore, requested that the parties confect a new custodial plan, and if they were unable to do so, to re-set the matter for a hearing.

Pursuant to judgment signed on November 14, 2019, the trial court denied and dismissed Ms. Bridges' request to relocate the children's residence. The trial court also ordered that Ms. Bridges would have periods of physical custody of the children in Dubai for extended periods when school was not in session and when she was in St. Tammany Parish. From this judgment, Ms. Bridges has appealed. On appeal, Ms. Bridges contends that: (1) the trial court erred in imposing a two-hour time limit per side for the presentation of evidence in violation of the United States and Louisiana Constitutions; (2) she suffered prejudice because of the inability to call and proffer the testimony of all of her witnesses; (3) the trial court erred in "taking judicial notice of" the alleged crime and unrest in the Middle East without taking evidence on the issue; (4) the trial court erred in considering its own "personal family reflections" in its findings of fact; (5) the trial court failed to "review and/or accept" the mandated factors for the relocation of a child's residence, as set forth in La. R.S. 9:355.14; and (6) the trial court abused its discretion in failing to set out a definite time period for visitation in favor of Ms. Bridges.

4

## LAW AND DISCUSSION

### *Manner of Trial*
(Assignment of Error Numbers 1 & 2)

Ms. Bridges assigns as error that the trial court inappropriately limited the time of trial to two hours and refused to permit her to call and proffer the testimony of all of her witnesses. She claims that the two-hour time frame was arbitrary and unreasonable, prejudicial, and a denial of her constitutional rights to due process and access to court.

Louisiana Code of Civil Procedure article 1631(A) provides that the "court has the power to require that the proceedings shall be conducted with dignity and in an orderly and expeditious manner, and to control the proceedings at the trial, so that justice is done." Additionally, La. C.C.P. art. 1632 provides for the normal order of trial, but expressly permits the trial court to vary the order "when circumstances so justify." It is only upon a showing of a gross abuse of discretion that appellate courts have intervened, as the trial judge has great discretion in conducting a trial. **Louisiana Safety Ass'n of Timbermen v. Carlton**, 2012-0775 (La. App. 1st Cir. 12/21/12), 111 So.3d 1076, 1081.

On appeal, Ms. Bridges contends that the trial court—in imposing the time limitations that it did—failed to follow the guidelines set forth in **Goodwin v. Goodwin**, 618 So.2d 579, 583-84 (La. App. 2nd Cir.), writ denied, 623 So.2d 1340 (La. 1993), and **Plaia v. Stewart Enterprises, Inc.**, 2014-0159 (La. App. 4th Cir. 10/26/16), 229 So.3d 480, 490-91, writs denied, 2016-2264, 2016-2261, and 2016-2258 (La. 2/3/17), 215 So.3d 692, 698, and 699.

In **Goodwin**, 618 So.2d at 583, the court set forth that while the due process clauses of the Louisiana Constitution and the Fourteenth Amendment to the United States Constitution guarantee litigants rights to a fair hearing, "due process" does not mean that litigants are entitled to an unlimited amount of the court's time. The

5

court noted that with today's overcrowded dockets, some trial judges, seeking to cut down the length of trials in cases pending before them, have imposed time limits on litigants for the presentation of evidence. *Id.* The court recognized that litigants still have a right to present all of their relevant, non-cumulative evidence, provided the probative value is not outweighed by undue delay and wasting the court's time. *Id.* The court then adopted the five following non-exclusive factors that should be considered in determining whether the trial court denied a party its due process rights and exceeded the authority granted by statute: (1) before imposing time limitations in a case, the trial judge should be thoroughly familiar, through pretrial proceedings, with the claims of the parties, the proposed testimony and number of witnesses, and the documentary evidence to be presented; (2) if they are used, time limits should be imposed on all parties, before any party presents any evidence, and sufficiently in advance of trial for the litigants to prepare for trial within the limits imposed; (3) the trial judge should inform the parties before the trial begins that reasonable extensions of the time limits will be granted for good cause shown; (4) the trial judge should develop an equitable method of charging time against each litigant's time limits; and (5) the trial judge should put all of his rulings regarding time limits and the reasons for the rulings on the record. **Goodwin**, 618 So.2d at 583-84. These factors were subsequently used by the court in **Plaia**, 229 So.3d at 490-91.

Based on our review of the record, we cannot say that the trial court abused its discretion or that it denied Ms. Bridges her due process rights in imposing the two-hour time limit per side for trial or in regard to her ability to call or proffer the testimony of witnesses. The record reflects that the trial court was aware of the issue before it, and as previously noted, the trial court issued a case management schedule on August 29, 2019. The case management schedule set the matter for trial for September 30, 2019 and set forth that each party was allotted

6

"approximately two hours to present their case and/or cross examine their opponent's witnesses." Thus, the two-hour time limit imposed by the trial court was applied equally to both parties and both parties knew one month in advance of trial that their trial time would be limited to approximately two hours per side. This was sufficiently in advance of trial to allow the parties to prepare for trial within time limits imposed. Although the case management schedule did not inform the parties the reason or reasons why the two-hour time limit per side was being imposed or that reasonable extensions of the time limit would be granted for good cause shown, we note that the record does not contain any objection—written or otherwise—by either party to the time limitation set forth in the case management schedule or a written request for additional time to present their case.

At the beginning of trial, the trial court asked counsel, "[D]id we set two hours for each side on this one…?" Counsel for Ms. Bridges then stated, "I believe that's what the order said. If you want to give us more time, I'd be happy to take it." The trial court then stated, "If that's what the order said, that's what the order meant. You will each have two hours." At this time, neither party objected to the trial court's imposition of the two-hour time limitation. The trial court then noted that the parties would be responsible for maintaining their time, although the trial court stated that its bailiff would be keeping track of the parties' time as well. Thus, the trial court's method for charging time against each party's time limit was equitable.

During the presentation of Ms. Bridges' case, her counsel called three witnesses, including Ms. Bridges, to the stand to testify.[2] At the conclusion of Ms. Bridges' case, she had 11 minutes, 20 seconds left of her time, and Mr. Bridges had 1 hour, 10 minutes, 51 seconds left of his time. During the presentation of Mr. Bridges' case, his counsel called four witnesses, including Mr. Bridges, to the

---

[2] Ms. Bridges also offered the deposition testimony of an expert, Karen M. Kirk, a licensed clinical social worker into evidence.

stand to testify. At the conclusion of Mr. Bridges' case, Mr. Bridges had a little less than 10 minutes left of his time, and Ms. Bridges was out of time. Notably, during and after the examinations and cross-examinations of the witnesses, each party's time remaining time was brought to their respective counsel's attention and again, no objection was made by either party to the time limitation.

Near the end of trial, following the examination of Mr. Bridges by the trial court, the trial court noted that time had run out for counsel for Ms. Bridges, but stated that it would allow them time to "follow up with anything on cross." Thus, even though counsel for Ms. Bridges had run out of time, the trial court granted them additional time to complete his cross-examination of Mr. Bridges.

Following Mr. Bridges' testimony and near the conclusion of the presentation of Mr. Bridges' case, counsel for Ms. Bridges requested that they be allowed to call a rebuttal witness. When the trial court inquired whether counsel for Ms. Bridges had time left, they responded that they would like to proffer. The trial court then stated it was "not going to allow it if time's run out. That's for rebuttal time, also."

Other than this rebuttal witness that counsel for Ms. Bridges sought to call at the end of trial, the record does not reflect that either party was unable to call any witness to the stand because of the time limitation. Although the trial court denied counsel for Ms. Bridges' request to call the rebuttal witness, counsel for Ms. Bridges neither specifically requested additional time to call the rebuttal witness nor did they set forth any reasons why additional time for that rebuttal witness was necessary. Rather, when the trial court pointed out that their time was up, counsel for Ms. Bridges replied that they would proffer the testimony. While the statement by the trial court to counsel for Ms. Bridges that it was "not going to allow it if time's run out" is unclear as to whether it was referring to the testimony of the rebuttal witness or to the proffer thereof, it is evident that the trial court did not

8

allow counsel for Ms. Bridges to call the rebuttal witness or to make a complete record of that witness's full testimony. However, we note that counsel for Ms. Bridges never identified that rebuttal witness and did not make (or attempt to make) a statement setting forth the substance of that rebuttal witness's testimony. See La. C.C.P. art. 1636 (providing that "[w]hen the court rules against the admissibility of any evidence, it shall *either* permit the party offering such evidence to make a complete record thereof, or permit the party to *make a statement setting forth the nature of the evidence*" (Emphasis added)).[3] As such, we cannot say that the trial court denied Ms. Bridges (or her counsel) the right to proffer the testimony of any witness.

Accordingly, we find no merit to these assignments of error.

### *Relocation*
(Assignment of Error Numbers 3, 4, and 5)

Next on appeal, Ms. Bridges contends that the trial court, in rendering its judgment denying her request to relocate the children's residence, erred in: failing to consider all of the mandated factors or provisions of La. R.S. 9:355.14; taking judicial notice of and relying on its own personal knowledge of danger, unrest, and/or crime in the Middle East; and interposing its own family history in its factual findings.

Generally, the relocation of a child's principal residence to a location out of state or in state is governed by Louisiana's relocation statutes, La. R.S. 9:355.1-9:355.19. La. R.S. 9:355.2. When the relocation of the children's principal residence is contested, La. R.S. 9:355.10 requires that the relocating parent prove that the proposed relocation is: (1) made in good faith; and (2) in the best interest of the child. Thus, Louisiana's relocation statutes retain the "best interest of the child" standard as the fundamental principle governing decisions made pursuant to

---

[3] Counsel for Ms. Bridges neither objected nor directly attempted to offer a proffer that was denied by the trial court either at the time of the attempt to call the rebuttal witness or later in the proceedings.

9

its provisions. **Curole v. Curole**, 2002-1891 (La. 10/15/02), 828 So.2d 1094, 1096.

Louisiana Revised Statutes 9:355.14(A) provides that:

In reaching its decision regarding a proposed relocation, the court shall consider all relevant factors in determining whether relocation is in the best interest of the child, including the following:

(1) The nature, quality, extent of involvement, and duration of the relationship of the child with the person proposing relocation and with the non-relocating person, siblings, and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child, and the likely impact the relocation will have on the child's physical, educational, and emotional development.

(3) The feasibility of preserving a good relationship between the non-relocating person and the child through suitable physical custody or visitation arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's views about the proposed relocation, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct by either the person seeking or the person opposing the relocation, either to promote or thwart the relationship of the child and the other party.

(6) How the relocation of the child will affect the general quality of life for the child, including but not limited to financial or emotional benefit and educational opportunity.

(7) The reasons of each person for seeking or opposing the relocation.

(8) The current employment and economic circumstances of each person and how the proposed relocation may affect the circumstances of the child.

(9) The extent to which the objecting person has fulfilled his financial obligations to the person seeking relocation, including child support, spousal support, and community property, and alimentary obligations.

(10) The feasibility of a relocation by the objecting person.

(11) Any history of substance abuse, harassment, or violence by either the person seeking or the person opposing relocation, including a consideration of the severity of the conduct and the failure or success of any attempts at rehabilitation.

(12) Any other factors affecting the best interest of the child.

A trial court's determination in a relocation matter is entitled to great weight and will not be overturned on appeal absent a clear showing of abuse of discretion. **Curole**, 828 So.2d at 1096. However, as to any underlying factual findings made by the trial court, such as whether the proposed relocation was made in good faith and whether the proposed relocation was in the best interest of the child, the manifest error standard of review is applicable. See **Curole**, 828 So.2d at 1097-98 and 1100-01.

In this case, the trial court, in its oral reasons for judgment, found that Ms. Bridges' request to relocate the minor children's residence was made in good faith because it was based on an opportunity for Ms. Bridges, who was ambitious and accomplished, to advance in her career and Ms. Bridges sincerely believed that the move would be beneficial to the children. Next, as to whether the proposed relocation of the children's residence to Dubai was in the children's best interest, the trial court thoroughly examined and analyzed the evidence in accordance with the factors set forth in La. R.S. 9:355.14(A) as follows.

With regard to the first factor, the trial court found that since the parties separated in 2015, the minor children have enjoyed a close and loving relationship with both of their parents, spending equal time between the two households in St. Tammany Parish, but that Ms. Bridges had recently moved with the parties' major child to Dubai with the intent to reside there for three years. The trial court also found that the minor children had extended family—both maternal and paternal—in St. Tammany Parish, that the minor children had lived their entire lives and attended school in St. Tammany Parish, and that they had friends in St. Tammany Parish. The trial court noted that the children also had a particularly close and loving relationship with their paternal grandparents (who resided in St. Tammany

11

Parish), as well as their older sibling, who chose to move with their mother to Dubai.

Insofar as the second factor was concerned, the trial court noted that the minor children had some medical and mental health issues, were on medication, and were emotionally fragile due to alleged sexual abuse by their maternal cousin. The trial court further noted that both of the minor children had anger issues and had been diagnosed with Attention Deficit and Hyperactivity Disorder, and that one of the children had been diagnosed with major depressive disorder. The trial court pointed out that the children had been engaged in extensive weekly therapy for some time in order to deal with their issues and that their doctors were located in St. Tammany Parish.

As to the third factor, the trial court found the distance, time and expense to travel between St. Tammany Parish and Dubai was great, that Ms. Bridges, due to her job benefits, could travel with relative ease, whereas it would be cost and time prohibitive for Mr. Bridges to travel to Dubai on any significant basis. In addition, the trial court noted that the minor children would have to be accompanied by an adult on flights to and from to Dubai, which could take approximately 24 hours in travel time each way.

As to the fourth factor, the trial court reached no conclusion. The trial court noted that other than each parent's self-serving testimony, the only testimony on the issue was from a social worker that the children had seen. The trial court noted that the social worker was not a court-appointed expert, but rather was engaged by Ms. Bridges and had minimal input and contact with Mr. Bridges. The trial court did not consider the social worker's "gratuitous opinions" on relocation because her report was commissioned by Ms. Bridges. The trial court also noted that while children's therapy with the social worker was supposed to focus on the children's anger and trauma issues, it soon transpired into questioning the children on their

12

feelings about their mother's move to Dubai, and further, according to the social worker's notes, the children were conflicted on the issue of relocation. The trial court also noted that the social worker had no particular training or experience in treating child victims of sexual abuse, and found that another therapist with such experience should be engaged by the parties immediately.

The trial court found there was no issue as to factor number five, as prior to Ms. Bridges' move to Dubai, the parties worked well in an equal joint custodial arrangement. On factor number six, the trial court found that the relocation of the children would greatly affect their quality of life. The trial court found that while there would certainly be financial, educational, and cultural benefits to the children in Dubai, the children were still of tender years and remaining in St. Tammany Parish would provide them with stability, safety, a fulfilling family life, and a good education. The trial court also noted that as a region, the Middle East was highly unstable, that the rights that men and women have in the United States were not guaranteed, even in "cosmopolitan Dubai," and that living in a democracy would be greatly beneficial during the children's formative years. The trial court also found that the children had medical and mental health care needs, which could be continued in St. Tammany Parish, and that they needed their father and his loving family in their lives to help cope and heal.

The trial court did not attribute any specific significance to factor number seven, noting that both parties were in good faith, both in proposing and objecting to the relocation of the minor children's residence. Additionally, the trial court found there was no issue as to factor numbers nine and eleven. As to factor number eight, the trial court found that the move to Dubai was a marvelous opportunity for Ms. Bridges and would improve her circumstances. And, with regard to factor number ten, the trial court found that relocation by Mr. Bridges to Dubai was impossible.

Thus, according to the trial court's reasons for judgment, it found the evidence weighed in favor of the children remaining in St. Tammany Parish (or in favor of Mr. Bridges' objection to the relocation of the children's residence) on four factors (*i.e.*, factors two, three, six, and ten), in favor of relocation of the children's residence to Dubai (or in favor of Ms. Bridges' request to relocate the children's residence) on one factor (*i.e.*, factor eight), equally in favor of both parties on one factor (*i.e.*, factor one), and in favor of neither party (or that the factor was not at issue) on five factors (*i.e.*, factors four, five, seven, nine, and eleven). Therefore, after considering all of the evidence in light of the factors set forth in La. R.S. 9:355.14(A), the trial court found that Ms. Bridges failed to meet her burden of proving that the relocation of the children's residence to Dubai was in their best interest. Based on our review of the record, we find no manifest error in the trial court's factual finding in this regard, as these findings are fully supported by the testimony at trial—in particular the testimony of both parties—and is not clearly wrong.

To the extent that Ms. Bridges claims on appeal that the trial court failed to consider all of the mandated factors or provisions of La. R.S. 9:355.14, interposed its own family history in its factual findings, and took judicial notice of or relied on its own personal knowledge of danger, unrest, and/or crime in the Middle East, we find no support in the record for her contention. Louisiana Revised Statutes 9:355.14(A) requires the trial court to "consider all *relevant* factors in determining whether relocation is in the best interest of the child." (Emphasis added). While Ms. Bridges argues in her brief that the trial court used its "own list of the 'relocation factors,'" the record and the trial court's reasons for judgment reflect otherwise. As previously set forth, the trial court's reasons for judgment reflect that it thoroughly examined and analyzed the evidence in accordance with the

14

relevant factors set forth in La. R.S. 9:355.14(A)[4] and concluded that the majority of factors weighed in favor of the children's residence remaining in St. Tammany Parish. Nor do we find any evidence in the trial court's reasons for judgment that the trial court interposed its family history into the factual findings in this case. While the trial judge mentioned her past estranged relationship with her father when she was questioning K.B., the parties' major child, regarding K.B.'s estranged relationship with her father and paternal grandparents, we note that the trial court's statements in this regard formed no part of its judgment or reasons for judgment, or its factual findings as to whether the proposed relocation of the children's residence to Dubai was in their best interest.

With regard to Ms. Bridges' contention that the trial court improperly took "judicial notice" of or relied on its own personal knowledge of danger, unrest, and/or crime in the Middle East, Ms. Bridges points to references about the Middle East, the United Arab Emirates, and/or Dubai made by the trial court during trial. Specifically, she points to the trial court's statements that it was aware of the location of the United Arab Emirates and its proximity to "a lot of places that aren't safe, quite frankly," that women previously were not allowed to drive in the United Arab Emirates, and that the ability to communicate via Facetime was limited because of the control exercised by that country over the internet and that people "don't have the same freedom of speech that we do."

Judges do not operate in a vacuum, and their life experiences necessarily come into play when they are on the bench. **Madison v. State, Dept. of Public Safety & Corrections**, 2014-1067 (La. App. 3rd Cir. 5/6/15), 164 So.3d 381, 385, <u>writ denied</u>, 2015-1117 (La. 9/18/15), 178 So.3d 147. However, notwithstanding these statements made by the trial court during trial, we find no evidence that the trial court relied on its personal knowledge about Dubai in reaching its decision

---

[4] As set forth above, the trial court found that five factors were either not at issue (or not relevant) or weighed in favor of neither party.

15

herein. Notably, Ms. Bridges, during her testimony, admitted both that women have only been allowed to drive in the United Arab Emirates for approximately seven years and that the internet was controlled in Dubai and/or the United Arab Emirates. We also note that those statements were made by the trial court during trial and formed no part of the trial court's judgment or reasons for judgment or its factual findings. As such, we cannot say that the trial court erred in making such statements during trial.

As to the trial court's reasons for judgment, other than the undisputed fact that Ms. Bridges and the parties' major child had already moved to Dubai and the significant distance between Dubai and St. Tammany Parish, the trial court's only reference to life in the Middle East was with respect to factor number six. Specifically, the trial court, after noting that there would be financial, educational, and cultural benefits available to the children in Dubai, stated that the "Middle East as a region remains highly unstable, and all the rights and opportunities that men and women in the United States of America value are not guaranteed …in…Dubai."

Judicial notice is a court's acceptance, for purposes of convenience and without requiring a party's proof, of a well-known and indisputable fact. Black's Law Dictionary, (8th ed. 2004). See also **S.J. Lemoine, Inc. v. St. Landry Parish School Bd.**, 527 So.2d 1150, 1153 (La. App. 3rd Cir. 1988) (providing that judicial notice is a method by which courts dispense with formal proof when there is no real necessity for it because the facts noticed are indisputable as a matter of notorious common knowledge or as being easily capable of immediate verification). A court is authorized to take judicial notice of an undisputed fact that is capable of accurate and ready determination. See La. C.E. art. 201(B)(2). Facts that may be judicially noticed may include laws of nature, geographic and historical facts, time, the calendar, laws and other matters of common knowledge.

<u>See</u> **Pierce v. Board of Sup'rs of Louisiana State University**, 392 So.2d 460, 464 (La. App. 1ˢᵗ Cir. 1979).

From our review of the record, we need not address whether the stability of the Middle East and whether the lack of certain personal freedoms in the United Arab Emirates or Dubai are well-known indisputable facts for which the trial court could properly take judicial notice because the trial court's statements in this regard were only part of its analysis in regards to factor number six. In regards to factor number six, it is apparent that the trial court concluded that factor number six weighed in favor of the children's residence remaining in St. Tammany Parish because the children had medical and mental health care needs, which could be continued in St. Tammany Parish, and that they needed their father and his loving family in their lives. Thus, the trial court's statements relative to the life in Middle East were essentially irrelevant to its ultimate factual findings on factor number six. Furthermore, the trial court found that the majority of the other relevant factors, *i.e.*, factors two, three, and ten, which had nothing to do with safety, life, or available freedoms in the United Arab Emirates or Dubai, weighed in favor of the children's residence remaining in St. Tammany Parish.

Having found no manifest error in the trial court's factual determination that Ms. Bridges failed to prove that it was in the best interest of the children to relocate their residence to Dubai, we cannot say that the trial court abused its discretion in denying and dismissing Ms. Bridge's request to relocate the minor children's residence to Dubai.

Accordingly, we find no merit to these assignments of error.

*Custodial Schedule*
(Assignment of Error Number 6)

Lastly, on appeal, Ms. Bridges contends that the trial court, after denying her request to relocate the minor children's residence, erred in failing to set out a

specific physical custodial arrangement.  As set forth above, Ms. Bridges, in her motion that was before the trial court, sought approval to relocate the minor children's residence to Dubai, and in conjunction therewith, a modified physical custodial schedule to facilitate the relationship between the children and Mr. Bridges.  Ms. Bridges did not request, in the alternative, that the trial court modify the parties' physical custodial schedule in the event her request to relocate the children's residence was denied.

At trial, Ms. Bridges testified that she had already moved to Dubai.  She further testified that, if the trial court granted her request to relocate the children's residence, Mr. Bridges should be granted physical custody "whenever [the children] are out of school for the summer, ... [w]hen they're out of school for holiday breaks, ...[and] anytime that [Mr. Bridges] [was] available."  After denying Ms. Bridges' request to relocate the minor children's residence to Dubai, the trial court, in its oral reasons for judgment, noted that Ms. Bridges had already moved to Dubai, that the parties' equal physical custodial plan would no longer work, and that a new physical custody plan would need to be confected.  The trial court requested that the parties try to "work it out"—either through their parenting coordinator, a mediator, or by themselves—but if they were unable to do so, then the matter could be reset by motion.  The trial court stated that it hoped that the physical custodial plan provided Ms. Bridges with the opportunity to have the children visit her in Dubai for extended periods of time when school was not in session and that she have periods of physical custody when she comes back to visit the United States.

With regard to physical custody in favor of Ms. Bridges, the judgment signed by the trial court, which was prepared by counsel for Ms. Bridges, provided: "**IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** that [Ms.] Bridges shall have periods of physical custody of the minor children in

Dubai for extended periods when school is not in session and also periods of physical custody when she is in St. Tammany Parish, State of Louisiana." Ms. Bridges contends that this provision is not clear or specific and merely prolongs litigation and intra-family discord between the parties.

Based on our review of the record, we cannot say that the trial court erred or abused its discretion with regard to this issue. Ms. Bridges sought approval to relocate the minor children's residence to Dubai and to modify the parties' physical custodial schedule to accommodate that request, and the trial court denied those requests. Ms. Bridges did not ask the trial court to set a specific physical custodial schedule in the event it denied her request to relocate the children's residence; thus, that issue was not properly before the trial court. While the trial court recognized that given its ruling and the fact that Ms. Bridges had already moved to Dubai, the parties' current physical custodial schedule would need to be modified, the trial court specifically ordered the parties either to work out a schedule or have the matter set on the court's docket. The judgment signed by the trial court essentially provided Ms. Bridges with the same periods of physical custody that she believed Mr. Bridges should be awarded in the event she was able to relocate the minor children's residence with her to Dubai. To the extent that Ms. Bridges finds the judgment unclear or non-specific or that the parties have been unable to work out a more definitive physical custodial arrangement, Ms. Bridges' remedy is to have the issue properly placed before the trial court.

Accordingly, we find no merit to this assignment of error.

## CONCLUSION

For all of the above and foregoing reasons, the November 14, 2019 judgment of the trial court is affirmed. All costs of this appeal are assessed to the plaintiff/appellant, Bobbi Jo Bridges.

**AFFIRMED.**

19

| BOBBI JO BRIDGES | STATE OF LOUISIANA |
|---|---|
| | COURT OF APPEAL |
| VERSUS | FIRST CIRCUIT |
| RYAN CASEY BRIDGES | NUMBER 2020 CU 0300 |

**WHIPPLE, C.J., concurring.**

While I recognize that a trial court has much discretion in the manner, mode, and conduct of trial of matters coming before it, I write separately to note that the imposition of a two-hour time limit for opening and closing arguments, presentation of the evidence and witnesses' testimony, as well as direct and cross examination, causes me grave concern. While judicial efficiency is an important goal, great care should be taken to ensure meaningful access to the courts. However, because there was no contemporaneous objection to the limitations imposed by the trial court, I concur in the decision reached by the majority.